[Civ. No. 23801.   First Dist., Div. Three.   Aug. 1, 1968.]

CALVIN & COMPANY, Plaintiff and Appellant, v. UNITED STATES OF AMERICA, Intervener and Respondent.

Raymond H. Levy for Plaintiff and Appellant.

Cecil F. Poole, United States Attorney, Richard L. Carico, Assistant United States Attorney, Mitchell Rogovin, Assistant Attorney General, Lee Jackson and Joseph Kovner for Intervener and Respondent.

BROWN (H. C.), J.—This is an appeal from a judgment following the granting of a motion for summary judgment to the United States as intervener in the San Francisco Superior Court action entitled "Calvin & Company, a California corporation, plaintiff v. Joseph Slavin, et al, defendant."

The only question presented by this appeal is whether there was a triable issue of fact concerning Joseph Slavin's

ownership of $7,575 which he borrowed and deposited as a cash bond to release appellant's attachment.

Calvin & Company claims that the $7,500 should remain under its attachment. Calvin & Company argues that this money, having been loaned to Slavin for the sole and exclusive purpose of being used as a deposit with the sheriff to release the attachment, did not become Slavin's property and, therefore, was not subject to the tax lien of the United States.

The parties are in agreement as to the facts.

The District Director of Internal Revenue at San Francisco made two assessments against Joseph Slavin and Francis Martin for employment and withholding taxes, penalties and interest, the first on November 3, 1964 in the sum of $7,004.86 and the second in February of 1965 in the sum of $5,849.36. No payment was made on either assessment, and notices of federal tax liens were filed with the Alameda County Recorder in January and March of 1965. (See Gov. Code, § 27330.)

On December 23, 1964, Calvin & Company filed a complaint seeking to recover $13,010 with interest from Joseph Slavin and others and thereafter proceeded to have the Sheriff of Alameda County attach certain money credits and debts due and owing to Joseph Slavin. These attachments were released on January 6, 1965, when Slavin posted with the sheriff a cash bond in the amount of $7,575, as permitted by section 540 of the California Code of Civil Procedure.

Slavin obtained the money used as a cash bond by borrowing $2,600 from the Bank of Fremont. His wife loaned him $4,825 from her separate assets and Slavin advanced $75 from his personal cash to comprise the total of $7,500. Both the Bank of Fremont and Mrs. Slavin were informed that the money was to be used to release the attachment in the Calvin & Company v. Slavin lawsuit.

The United States filed and served a complaint in intervention in the action brought by Calvin & Company against Joseph Slavin on October 11, 1965, seeking a personal judgment against Slavin for the taxes, penalties and interest which had been assessed against him and for a judgment foreclosing the tax lien against the cash bond of $7,575, which had been posted to release the attachment. Calvin & Company answered denying that the bond had been posted with money belonging to Joseph Slavin, as set forth in the United States complaint in intervention. Thereafter the trial court made its order granting the motion, and a judgment based on the order was entered in favor of the United States and against appel-

lant and Joseph Slavin. The judgment provided that "any rights or claims that Plaintiff CALVIN & COMPANY may have against the property and rights to property of Defendant JOSEPH SLAVIN are subject to and inferior to the tax liens of the Intervenor UNITED STATES OF AMERICA for the third and fourth quarters of 1964 against said Defendant . . ."

This appeal followed.

The Internal Revenue Code of 1954, section 6321, provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." (26 U.S.C. (1964 ed.) § 6321.)

Section 6322 states: "Unless another date is specifically fixed by law, the lien imposed by section 6321 shall arise at the time the assessment is made and shall continue until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." (26 U.S.C. (1964 ed.) § 6322.)

The amount of any unpaid tax, together with interest, penalties and other additions thereto generally constitutes a lien on all property and rights to property, whether real or personal, belonging to the taxpayer. (Internal Rev. Code of 1954, § 6321.) The lien arises on the date of assessment and continues until the liability secured thereby is satisfied or becomes unenforceable by reason of lapse of time. usually six years if there is no collection activity. (Internal Rev. Code of 1954, §§ 6322, 6502.) The lien attaches automatically to all property and rights to property acquired by the taxpayers during the life of the lien as well as to property and rights to property which belonged to the taxpayers at the date of assessment. (*Glass City Bank* v. *United States,* 326 U.S. 265 [90 L.Ed. 56, 66 S.Ct. 108].)

The tax lien which arises on the date of the assessment is superior to any subsequently arising claim, including the claim of a bona fide purchaser, in the absence of a federal statute requiring filing or recordation. (*United States* v. *Snyder,* 149 U.S. 210 [37 L.Ed. 705, 13 S.Ct. 846].)

Internal Revenue Code of 1954, section 6323, has provided for certain exceptions applying to purchasers, judgment lien creditors and others until a notice is filed at designated offices. (In California notice is filed with the county recorder.) (See

Gov. Code, § 27330.) The appellant does not come within the exceptions set forth in section 6323.

An "inchoate" claim such as appellant's attachment lien does not take precedence over an unfiled tax lien. If a notice of tax lien is filed before an "inchoate" claimant perfects his status as a purchaser, judgment lien creditor or other person protected by section 6323, the tax lien has priority. (*United States* v. *Acri*, 348 U.S. 211 [99 L.Ed. 264, 75 S.Ct. 239]; *United States* v. *Security Trust & Sav. Bank*, 340 U.S. 47 [95 L.Ed. 53, 71 S.Ct. 111].)

The assessments for tax penalties and interest in the sum of $7,004.68 was therefore a lien on all property owned by Slavin as of November 3, 1964, or thereafter acquired by him, and the assessment for taxes, penalties and interest in the sum of $5,849.36 was a lien on all the property owned by Slavin as of February 26, 1965, or thereafter acquired by him. The intervention by the United States here was well within the six-year period prescribed by section 6502. (26 U.S.C. (1964 ed.) § 6502.)

Calvin & Company contends, however, that the money used for the cash bond was loaned by Mrs. Slavin and the Bank of Fremont for the sole purpose of releasing the attachment and was not the property of Slavin, and therefore not subject to the tax lien. The California Civil Code distinguishes between a loan for use (Civ. Code, § 1884) and a loan of money (Civ. Code, § 1912). A loan for use is a contract by which one person gives to another the temporary possession and use of personal property, and the latter agrees to return the same property at a future time (Civ. Code, § 1884) while "[a] loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed. . . ." (Civ. Code, § 1912.)

The court in *Peoples Nat. Bank* v. *Southern Surety Co.*, 105 Cal.App. 731 [288 P. 827], considered the question whether there is a loan for use when the lender is informed of the use to be made of the loan proceeds and a loan in which the lender is not so informed. "While there is considerable refinement in the arguments of counsel concerning the nature of this transaction, we think there is no escape from the conclusion that the money advanced to the contractor, irrespective of the purpose for which it was advanced, constituted essentially a loan, to the amount of the money advanced, and that the relationship of creditor and debtor between the bank and the contractor was thereby created. The fact that the money

was advanced for a particular purpose, as alleged in the amended complaint, does not change the legal character of the act, or affect in any particular, the legal relation between the bank and the contractor effected [sic] thereby. A loan does not become any less a loan because the borrower names the purpose for which he desires the money, or the loaning party advances the money to be used by the borrower, for a specified purpose. It is a loan, and simply a loan, and takes on no additional character nor is the loan clothed with any additional sanctity simply because the parties thereto are agreed as to the purpose for which the money loaned is to be used.'' (At pp. 732-733.)

It is recognized that Slavin could have obtained the release of the attachment by the posting of a surety bond or by the qualification of personal sureties. The surety bond or the sureties would not have created a property right in Slavin which would be subject to the United States tax lien. A surety bond and the obligation of sureties differ in that the obligation there is contractual and conditioned upon the plaintiff or obligee obtaining a final court judgment. Here the transaction was merely a loan of money to Slavin which, upon coming into his possession or posted by him as a bond, became subject to the United States tax lien.

It is concluded the claim which formed the basis for Calvin & Company's attachment of Slavin's property had not been reduced to judgment, was an inchoate unliquidated claim, and was subject to and inferior to the United States tax lien. (See *Glogau* v. *Hagan*, 103 Cal.App.2d 828 [230 P.2d 392].)

Respondent, the United States, requests that this court modify the judgment of the trial court to conform to the trial court's ruling, which, while omitting to mention specifically that the summary judgment referred to the cash bond of $7,575, unquestionably intended to do so. It is clear that the question presented to the trial court for decision was whether the $7,575 cash bond posted to release the attachment was the property of Joseph Slavin. Respondent's request for modification is therefore granted.

The trial court is directed to modify the judgment to provide that the right and claim of Calvin & Company to the $7,575 cash placed as a bond to release the attachment is subject to and inferior to the tax liens of the intervener, United States of America.

The judgment as so modified is affirmed.

Draper, P. J., and Salsman, J., concurred.