[Civ. No. 28270. Second Dist., Div. Four. Nov. 18, 1964.]

EDWARD F. MAZE et al., Plaintiffs and Respondents, v. SYCAMORE HOMES, INC., Defendant and Appellant.

Roger K. Patterson for Defendant and Appellant.

Heily & Blase and Edward L. Lascher for Plaintiffs and Respondents.

JEFFERSON, J.—Defendant Sycamore Homes, Inc., is engaged in housing development and its activities included the development of a housing project in Yorba Linda, Orange County. Plaintiffs are husband and wife, the husband being a paving contractor in Ventura, California. Defendant secured $24,000 from plaintiffs pursuant to the following agreement:

## "INVESTMENT AGREEMENT

"This agreement, executed on February 23, 1960, by and between Edward F. Maze and Edna Mae Maze, as tenants in common, hereinafter called Maze, and Sycamore Homes, Inc., hereinafter called Sycamore.

"Sycamore hereby acknowledges receipt from Maze of the sum of $24,000.00, (Twenty-four Thousand Dollars), and agrees to repay same on or before one year from date hereof, and in addition, the sum of $4,800.00, (Four Thousand Eight Hundred Dollars) representing a return based on a profit participation concerning the construction and sale of lots 6, 7, 8, 9, 34, 33, 32, 30, 29, 17, 21 and 22 of Tract 2024, in the City of Yorba Linda, County of Orange, State of California as shown on a map thereof recorded in Book 108, pages 4 and 5, Miscellaneous Maps, records of said Orange County.

"The total sum so payable, $28,800.00, (Twenty-eight thousand Eight Hundred Dollars) is to be secured by an assignment delivered to Security Title Insurance and Trust Company on this date, who shall issue the title policies on these lots; and to Keystone Savings & Loan Association of Anaheim, Calif. who will be conducting the sale escrows, and will be holding the funds on same.

"Dated: February 23, 1960 SYCAMORE HOMES, INC.
By: /s/ Jack Conrad
Jack Conrad, Vice President

"Agreed to and Accepted:

"/s/ Edward F. Maze
Edward F. Maze

"/s/ Edna Mae Maze
Edna Mae Maze

Upon failure to repay the entire sum due under said agreement, which was extended for one year, plaintiffs sued for the balance due on the contract and were awarded judgment against defendant in the sum of $11,600 with interest from February 23, 1962. Defendant appeals from such judgment,

contending the transaction was in reality a usurious loan and that interest was erroneously allowed by the court.

The trial court was of the opinion that the "Investment Agreement" was ambiguous and needed oral testimony for clarification and that it did not embody the entire contract of the parties. Accordingly, the agreement was construed in accordance with what the court concluded from the evidence were the intentions of the parties when they entered into the agreement.

The "Investment Agreement" was entered into after the accounting firm of Fuhler and Baker contacted plaintiffs and solicited their participation. The accounting firm had been engaged in its accounting capacity by both parties to the action previous to its solicitation of plaintiffs in this matter. Part of its assigned functions for defendant was to contact potential sources of investment capital for defendant's ventures, which the firm had done on at least one previous occasion. In the instant case, the firm was paid $2,400, being 10 per cent of the amount secured from plaintiffs, as a "finder's fee" for making the contact with plaintiffs. By reason of the employment of the firm by plaintiffs, as well as defendants, a fiduciary relationship existed between the accounting firm and plaintiffs.

In February 1960 defendant desired to expand its operations. The money involved in this action was not needed for the specific purpose of developing tract 2024, mentioned in the agreement. However, as "security" for repayment of plaintiffs' "investment" an additional instrument was executed in the following form:

## "ASSIGNMENT

"FOR AND IN CONSIDERATION of the sum of Twenty-four Thousand Dollars, ($24,000.00), receipt of which is acknowledged, Sycamore Homes, Inc., does hereby assign irrevocably to Edward F. Maze and Edna Mae Maze, as tenants in common, of P.O. Box 689, Wagon Wheel Junction, Oxnard, California, the sum of $2,400.00 per lot on the following described property, the same to be paid to them on an escrow release basis at the rate of $2,400.00 per lot sold and payable out of the monies due to the undersigned out of each respective sales escrow. The property on which said assignment is made is described as follows:

" 'Real Property in the City of Yorba Linda, County of Orange, State of California, Lots 6, 7, 8, 9, 34, 33, 32, 30, 29, 17, 21 and 22 of Tract No. 2024, as shown on a map thereof

recorded in Book 108, Pages 4 and 5, Miscellaneous Maps, records of said Orange County.'

"It is agreed that a full release will be executed on this assignment when a total of $28,800.00 has been fully paid to Edward F. Maze and Edna Mae Maze.

Dated: February 23, 1960

"SYCAMORE HOMES, INC.

"Approved: By: /s/ Jack Conrad
 Jack Conrad, Vice President
/s/ Edward F. Maze
Edward F. Maze Copy Received:

/s/ Edna Mae Maze Security Title Insurance Co.
Edna Mae Maze By: /s/ Lloyd G. Peterson"

Between February 23, 1960, and February 23, 1961, plaintiffs were repaid $12,000 pursuant to such assignment and escrow releases. At the due date of the "Investment Agreement" defendant requested an extension and a written agreement dated March 13, 1961, was executed by plaintiffs which provided for the one-year extension but included the provision that "all terms and conditions shall remain the same." Defendant paid plaintiffs $2,800 as consideration for such extension. During the following year only one additional payment of $2,400 was made to plaintiffs. Plaintiffs' action was brought for $14,400. The trial court found the $2,800 paid for the extension was usurious and reduced plaintiffs' claim by that amount, rendering judgment for $11,600 plus interest at 7 per cent from February 23, 1962.

Defendant concedes an obligation to plaintiffs in the amount of $6,000 computed, generally, by deducting from plaintiffs' claim of $14,400 the following sums: (a) the $2,800 usurious payment for the extension, (b) $2,400 as usurious interest of $400 per lot as to each lot for which payment was made, and (c) $2,400 for alleged usurious interest in the like amount for six lots included in plaintiffs' claim for which payment was not yet made.

Defendant's principal argument on appeal in support of its general contention that the transaction was usurious is that the findings of fact do not as a matter of law support the conclusions of law and judgment of the trial court. The judgment of the trial court was based not only upon the written instruments, the "Investment Agreement" and the "Assign-

ment," but, as indicated in the court's memorandum, the testimony of the parties, their stipulations and the record. In the light of all of the evidence the court construed such instruments as resulting in a contract of guaranty by which defendant assured plaintiffs that a "return" of their "investment" with the specified agreed profit of $4,800 would be made in the form of "profit participation" in the monies assigned from the sales of the particular houses mentioned in the assignment. The sales did not materialize as expected and the trial court has held defendant responsible on its guaranty as an unconditional promise to pay the agreed amount. The gist of the action, therefore, is whether such an interpretation is valid as a matter of law or whether the construed agreement was an attempted circumvention of the usury law and, therefore, unenforceable.

The basic usury law is set forth in article XX, section 22, of the California Constitution: "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 percent per annum upon any loan or forbearance of any money, goods or things in action."

In *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 339-340 [163 P.2d 869, 165 A.L.R. 621], a loan is defined as follows: "A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the parties the transaction will be deemed a loan regardless of its form. (*In re Grand Union Co.*, 219 F. 353, 356 [135 C.C.A. 237]; *O. A. Graybeal Co.* v. *Cook*, 111 Cal.App. 518, 528 [295 P. 1088].)"

Regarding the intent of the parties the authorities hold that "the conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete." (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 740 [269 P.2d 12].) When the transaction violates the usury law the intent of neither of the parties is material. (*Martin* v. *Kuchler*, 212 Cal. 536 [299 P. 52].)

In *Wood* v. *Angeles Mesa Land Co.*, 120 Cal.App. 313, 324, 326-327 [7 P.2d 748], the court stated: "If the character of a transaction were in doubt much aid would be had in determining its true nature by discovering the intent behind the

scheme. But where the character, scope and general purpose and design is found, intent becomes more or less immaterial. The old truism holds that one is presumed to intend to do that which in fact he actually does. If one lends money to another at an usurious rate, on a straight out-and-out loan, the fact that he had no manifest intent to violate the law would be of no consequence. Summing up, intent is material in determining the nature of a transaction; but the true nature being shown or admitted, the intent with which the act was performed is beside the inquiry . . . . Meeting the question squarely we hold that the contract, on its face, discloses nothing more than a loan. . . . Throughout these terms we find no duties imposed upon the Land Company [defendant] other than to furnish money. The construction of the building is left to the control and direction of Wood [plaintiff]. . . . We can find no language supporting the idea of purchase and sale. *It seems too plain for further discussion that the transaction was, on its face, an agreement for the use of money and nothing more.*" (Italics added.)

The case of *Martin* v. *Ajax Constr. Co.*, 124 Cal.App.2d 425, 428 [269 P.2d 132], involved transactions almost identical to those in the instant case. The Martins signed a written instrument containing the following: "Ajax 'is about to engage in a larger, more active program of construction.' Martins are 'willing to loan' Ajax money to assist this program. The Martins do 'hereby loan the first party the sum of $5,000.' Ajax represents that 'it is about to commence a construction program of 150 duplex or double bungalows, together with 40 single family residences' on certain tracts if available, or 'such other tract or tracts as might be selected' by Ajax 'until 150 duplex . . . and 40 single residences shall have been built.' Ajax 'agrees that upon completion of each building . . . it will execute and deliver . . . an irrevocable assignment' of $100 or $50 upon each duplex or single so completed. Ajax agreed that the Martins 'shall be entitled to have and receive, in consideration of said loan . . . the total sum of $10,000.00 payable . . . on or before one year from the date hereof.'

"Pursuant to such agreement and coeval therewith, Ajax executed its promissory note in the sum of $10,000 in favor of respondents and caused its principal stockholders, C. W. Beck and W. H. Beck, to execute a guaranty of the note on the reverse side thereof.

"When one year had elapsed and appellants were unable

to go through with their original building plan, Mr. Chris W. Beck called on respondents, made his explanations for the delays and offered to execute an agreement to pay respondents $250 as a bonus for their extension of the maturity date of the original note. Pursuant to respondents' acceptance of such offer, Ajax executed its written agreement to pay $250 for such extension and agreed to pay both notes 'from the sales proceeds of the Compton duplexes or upon our receipt of the loan residue, whichever event occurs first'— which agreement was accepted by respondents.''

The similarities to the instant case are noted: (1) A definite sum was to be paid in one year; (2) an assignment of funds was made as purported security; (3) a partial prepayment system was set up payable out of escrows; (4) a usurious payment was agreed upon for an extension; (5) the transaction was not a joint venture and plaintiffs did not participate or have any control over the operations; and (6) the promise to pay was unconditional and guaranteed by the principal stockholders of Ajax.

The trial court, in *Martin*, had made a finding '' 'that the transaction herein was in a fair sense a joint adventure rather than a loan,' '' but the appellate court reversed the trial court and stated: ''. . . the record reveals no substantial evidence to support such finding. ██ Neither does the term 'advance' nor the word 'invest' have such a significance as will indicate that the contracting parties intended to form a partnership or to engage in a joint venture. Both words are ambiguous. Each applies equally to a loan or a joint venture. The same may be said of the statement of the purpose for which the money was to pass from respondents to appellants. To determine the issue, one must look to those elements of a transaction which exist in a loan but not in a joint adventure and vice versa.

''In the case of a loan, the lender does not share in the profits of the enterprise; neither does he run any risk of loss of his capital other than that of insolvency of the borrower, attendant upon all loans. Here there is an unconditional promise to pay on the part of Ajax and its guarantors. Respondents had no control over the management of the building enterprise; they could not designate the lands on which the houses should be built, the materials to be used, the laborers that should be employed. They had no voice in arranging terms for the sales of the new homes. There was no responsibility on their part for any tort or contract liabilities appellants might incur.''

In *Whittemore Homes, Inc.* v. *Fleishman,* 190 Cal.App.2d 554, 558, 559 [12 Cal.Rptr. 235], a similar transaction involved an agreed guaranteed payment of $60,000 for an "investment" of $45,000 in a housing project, the defendant to receive $500 from each of the residences sold, and $1,000 for each lot sold, and other considerations. The transaction was held usurious and the court stated: "The promise to pay the $60,000 and interest thereon was unconditional. Only the 53½ per cent profit was conditional. Nowhere does there appear any monetary liability on defendant nor any provision for his contingent loss of capital investment if plaintiff's venture proved unprofitable. . . . Neither is the term 'investment' in any way contradictory of a 'loan.' . . . In usury cases, as in others, courts may properly cut to the real truth and disregard terminology which the evidence shows was not the real substance of the agreement."

While there are several exceptions, qualifications and defenses to the application of the usury doctrine none apply to the instant case. There was no sale involved. (E.g. *Rose* v. *Wheeler,* 140 Cal.App. 217, 220 [35 P.2d 220].) There was no property subject to a mortgage. (E.g. *Zimmerman* v. *Boyd,* 97 Cal.App. 406 [275 P. 509].) There was no purchase of an obligation at a discount. (E.g. *C. F. Janisse* v. *Winston Investment Co.,* 154 Cal.App.2d 580, 585 [317 P.2d 48, 67 A.L.R.2d 225].) There was no partnership or joint venture. (E.g. *Moore* v. *Dealy,* 117 Cal.App.2d 89, 95 [254 P.2d 888] ; *Sedia* v. *Elkins,* 201 Cal.App.2d 440, 450 [20 Cal.Rptr. 278].) There was no contingent interest payment. (E.g. *Jameson* v. *Warren,* 91 Cal.App. 590, 595 [267 P. 372].) There was no hazardous investment. In *Wooton* v. *Coerber,* 213 Cal.App.2d 142, at page 157 [28 Cal.Rptr. 635], the court cites 91 Corpus Juris Secundum, section 25, page 599, as stating: " 'When, for any cause whatever, the principal sum lent or any part thereof is put in hazard, the lender may lawfully require for the risk incurred as large a sum as may be agreed on in good faith. . . . When the loan is absolutely repayable and only the security for its repayment is at hazard, an interest charge in excess of legal rates is usurious.' "

An examination of the record does not disclose one iota of evidence to the effect that monies received from the sale of the subject houses constituted "profits" in which plaintiffs could "participate." The findings of fact, number 3, state: "In consideration of said investment of the Mazes, at said time, Sycamore agreed to and did grant to the Mazes

a $28,000.00 participation in the net profits to be derived from twelve specified lots in Unit No. 2 within a period of one year, which sum of $28,800.00 was to constitute the *'return'* of the Mazes on their said investment." (Italics added.)

Furthermore, the evidence disclosed that the money was not used in the construction of the houses from the sale of which plaintiffs were to receive their "return." The money was considered "invested" in defendant's general business, the method of repayment, by the assignment of monies from sales, being considered some security against dissipation of such funds otherwise by defendant. The assignment in no manner constituted a lien against the properties and as such was not a true "security." for the repayment. The parties stipulated at trial that the transaction was not a joint venture. The testimony admittedly established that plaintiffs acquired no interest of any kind in defendant's business, that they had no control whatsoever in its management or in the manner in which the money they supposedly invested was to be used. They were to receive "their" guaranteed profit regardless of any profit or loss resulting from defendant's business or from the sale of the particular houses involved. The obligation of defendant was viewed as an unconditional agreement to return the money invested plus $4,800 on such investment, not as a fractional sharing in any "actual" profit resulting from defendant's operations. In fact, such "profit" was payable, under the view taken by the trial court, even though defendant might actually sustain loss in its operations. Hence, the "investment" feature, or "profit participation" aspect of the "Investment Agreement" can properly be considered window dressing in an attempt to circumvent the usury proscriptions.

The nature of the transaction is disclosed by the testimony and exhibits as one providing for a return of 20 per cent on the investment, at $400 per lot, and as being secured. The trial court's interpretation provides the "security" in the form of contractual enforceability of a contract of guaranty. No actual security was provided by the "assignment" of funds that were not forthcoming. Nor did such purported security affect the unconditional nature of the construed guaranty.

Here, the interpretation of the facts by the trial court to justify a "guaranteed return" on plaintiffs' "investment" appears incompatible with the wording of the written instruments and their application to the facts in evidence.

There was no "profit" from any sales established by any

evidence from which a "return" could be made. Therefore, upon failure of the anticipated fund in which plaintiffs could enjoy a "profit participation" the trial court has created by its interpretation of the instruments an unconditional promise to pay the stated amounts, as a general obligation, unrelated to any manner of use of plaintiffs' monies. To the extent such repayment exceeds the amount advanced plus allowable interest it must be held usurious unless defenses such as those indicated above apply. The repayment expected was obviously consideration for the use of plaintiffs' money and nothing else. No incidents or conditions pertaining to its use appear, nor do any possible defenses apply. Accordingly, the 20 per cent charge, apparent from the face of the instruments, is clearly usurious.

 When an instrument is usurious no interest whatsoever is recoverable by the usurious lender. (*Stephans* v. *Herman,* 225 Cal.App.2d 671, 673 [37 Cal.Rptr. 746].) The $2,800 paid to plaintiffs for the one-year extension agreement which contained the wording "all terms and conditions shall remain the same" was properly held usurious by the trial court and it further tainted the entire transaction including the original "Investment Agreement." The fact that the trial court disallowed such payment as usurious and credited it against the actual principal loaned did not efface the taint. (*Williams* v. *Reed,* 48 Cal.2d 57, 68 [307 P.2d 353].)

The present transaction was an agreement for the use of money and for the payment of a usurious consideration therefor. The judgment is reversed in part and the cause is remanded to the trial court with instructions to modify and reduce the judgment in favor of plaintiffs to $6,000, without interest to date of judgment.

Burke, P. J., and Kingsley, J., concurred.

A petition for a rehearing was denied December 8, 1964, and respondents' petition for a hearing by the Supreme Court was denied January 13, 1965. Burke, J., did not participate therein.