[Civ. No. 28093.   Second Dist., Div. Two.   Feb. 8, 1965.]

GOLDEN STATE LANES, Plaintiff and Appellant, v. HOWARD M. FOX et al., Defendants and Respondents.

Hirsch, Susman, Glushon & Gelfand, Alvin Hirsch and Eugene E. Glushon for Plaintiff and Appellant.

Parker, Stanbury, McGee, Peckham & Garrett and Allan J. Greenberg for Defendants and Respondents.

FLEMING, J.—Usury. Plaintiff Golden State Lanes, Inc. sought relief from an alleged usurious agreement, and appeals from a judgment entered for defendants, the Fox Group, after a nonjury trial. Plaintiff contends the transaction between it and the Fox Group constitutes a usurious loan as a matter of law.

The events leading up to the disputed transaction began on May 18, 1959, when plaintiff Golden State secured a 20-year lease on premises from Haberfelde, at a rental of $1,050 a month plus percentage, for use as a bowling alley complex in Bakersfield, California. Under the Haberfelde lease Golden State was required to remodel the premises into a modern, attractive bowling alley, cocktail lounge, and coffee shop, and provide fixtures and equipment for operation. After Golden State had spent $100,000 in remodelling, it found it needed an additional $150,000 to complete the job, and it enlisted the services of Cliff Wolfe and Associates to raise the money. Wolfe put Golden State in touch with defendants, the Fox Group, with whom negotiations were carried on which led to the disputed agreement of September 9, 1959.

This agreement, entitled "Agreement for Assignment of Lease, Sublease and Repurchase of Lease", provided: (1) the Fox Group would pay Golden State $1,000 and deposit $149,000 in a Beverly Hills bank to meet obligations for improvements previously incurred by Golden State, the money to be withdrawn by joint order of Golden State and the Fox Group; (2) Golden State assigned its interest in the Haber-

felde lease to the Fox Group; (3) the Fox Group subleased the premises back to Golden State for eight years at a rental of $1,050 a month plus percentage, payable directly to Haberfelde, plus an additional rental of $2,500 a month payable directly to the Fox Group; (4) Golden State agreed to repurchase the Haberfelde lease from the Fox Group for $150,000 at the end of eight years. Golden State became entitled to repurchase the Haberfelde lease earlier, for $300,000 on October 1, 1961, and for $225,000 on October 1, 1964; (5) the individual stockholders of Golden State personally guaranteed performance of the agreement, including the mandatory buyback provision, and agreed to indemnify the Fox Group against default by Golden State; (6) the individual stockholders, in addition to their guaranty, agreed to pledge their shares with a nominee of the Fox Group to secure the faithful performance of the agreement by Golden State and the individual guarantors; (7) Golden State agreed to give the Fox Group a chattel mortgage covering all fixtures, equipment, and furnishings on the premises; (8) on default, the Fox Group could enter the premises, take immediate possession, and terminate all rights of Golden State and the guarantors in the premises.

The issue is whether performance of this agreement created a usurious loan or transferred a leasehold interest in realty.

*General Principles of Usury*

■ Article XX, section 22, of the California Constitution provides: "No person, association, copartnership or corporation shall by charging any fee, bonus, commission, discount or other compensation receive from a borrower more than 10 per cent per annum upon any loan or forbearance of any money, goods or things in action."

The limitation on the rate of interest does not apply to sales of property, which normally may be made at any price agreed upon between the parties. ■ The distinction between a sale and a loan has been succinctly defined in *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 339-340 [163 P.2d 869, 165 A.L.R. 621]: "A sale is the transfer of the property in a thing for a price in money. The transfer of the property in the thing sold for a price is the essence of the transaction. The transfer is that of the general or absolute interest in property as distinguished from a special property interest. ■ A loan, on the other hand, is the delivery of a sum of money to another under a contract to return at some future time an equivalent amount with or without an additional sum agreed upon for its use; and if such be the intent of the

parties the transaction will be deemed a loan regardless of its form. [Citing cases.]

"In a sale the delivery of the absolute property in a thing and the receipt of a price therefor consummate the transaction. In a loan the initial transaction creates a debit and credit relationship which is not terminated until replacement of the sum borrowed with agreed interest."

In a loan the lender does not share in the profits of the enterprise, nor does he run any risk of loss of his capital other than that of the insolvency of the borrower, attendant upon all loans. (*Martin* v. *Ajax Constr. Co.*, 124 Cal.App.2d 425 [269 P.2d 132].) A transaction is likely to be a loan where the recipient has parted with title to property of his own as security. (*Wooton* v. *Coerber*, 213 Cal.App.2d 142, 151 [28 Cal.Rptr. 635].)

A contract in the form of a sale with an option to repurchase is treated as a loan where the contract is simply a cloak to cover up a scheme. to collect usurious interest. (*Rosemead Co.* v. *Shipley Co.*, 207 Cal. 414 [278 P. 1038].) Substance is more important than form, and the name with which excessive payments are labeled or the guise under which they are exacted is immaterial if in truth they are for the forbearance of money. (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 740 [269 P.2d 12].) A case is not judged by what the parties appear to be or represent themselves to be doing, but by the transaction as disclosed by the evidence. (*Terry Trading Corp.* v. *Barsky*, 210 Cal. 428 [292 P. 474].)

"The conscious and voluntary taking of more than the legal rate of interest constitutes usury and the only intent necessary on the part of the lender is to take the amount of interest which he receives; if that amount is more than the law allows, the offense is complete." (*Thomas* v. *Hunt Mfg. Corp.*, 42 Cal.2d 734, 740 [269 P.2d 12] ; *Martin* v. *Kuchler*, 212 Cal. 536 [299 P. 52] ; *Maze* v. *Sycamore Homes, Inc.*, 230 Cal.App.2d 746 [41 Cal.Rptr. 338].)

*A Loan and not a Purchase*

Applying these principles to the present case, it is clear to us that a loan is involved and not a bona fide sale and repurchase of the lease. Plaintiff initially leased the premises, invested $100,000 in the enterprise, and then approached Cliff Wolfe and Associates to raise more money for lack of which it stood to lose its entire investment. Plaintiff got $150,000 from defendants to be used to meet existing construction commitments. Plaintiff and its guarantors be-

came unconditionally obligated to pay defendants $30,000 a year ($2,500 a month) for eight years, and then absolutely bound to pay back the full amount of $150,000 at the end of the eight-year period. Plaintiff at all times remained in physical possession of the premises and retained full control over the operation of the bowling alley and all other facilities.

The only customary feature in the lending of money absent from this case is the power to accelerate the principal payment of the loan on default. However, an acceleration power is not an inherent part of a debtor-creditor relationship but one which must be authorized by contractual agreement between the parties. In this instance, while there is no acceleration of principal, the loan is secured by (1) the credit of the corporation; (2) the lease; (3) the individual guaranties of payment; (4) the pledge of corporate stock; (5) the mortgage of chattels. Defendants have the additional benefit under the contract of a weapon even more powerful than acceleration, *viz.*, the power to enter the premises and declare a forfeiture. Under the terms of the contract, on plaintiff's default defendants can seize possession and purport to wipe out plaintiff's entire interest in the premises, or defendants through the stock pledge can assume control of the corporation and operate the enterprise themselves without terminating the agreement and its obligations. The loan is without risk of loss on the part of the lenders except for a combination of the bankruptcy of the plaintiff and its stockholder-guarantors and a diminution in the value of the leasehold, its fixtures, furnishings, and equipment.

We conclude that the agreement provided for a loan of $150,000 repayable at the end of eight years, with a payment of $30,000 annually as compensation for the use of the money, that is to say interest at 20 per cent, which is double the lawful maximum rate. Moreover, should plaintiff repay the debt in advance under the options in the contract, it must pay an added premium of either 100 per cent of the principal amount at the end of two years or of 50 per cent of the principal amount at the end of five years, each of which payments would likewise be usurious.

Defendants argue that because plaintiff initiated the transaction and because plaintiff's agent, Cliff Wolfe and Associates, worked out the arrangement between the parties, plaintiff may not be heard to complain. These facts are irrelevant to usury, for it makes no difference whether the borrower or the lender takes the initiative in the transaction, or prepares the instrument involved. If a loan is usurious,

the law applies. (*Martin* v. *Ajax Constr Co.*, 124 Cal.App.2d 425, 431 [269 P.2d 132].)

Throughout the centuries money-lenders have displayed their ingenuity in attempting to maximize rates and eliminate risks. Courts have been equally ingenious in cutting through form to reach the substance of a particular transaction and apply legal rules in harmony with that substance. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 340 [163 P.2d 869, 165 A.L.R. 621].) Today's basic real estate loan originated in the form of an absolute sale of real property. Historically, the fee to real property was conveyed either absolutely or conditionally to the lender, and on repayment of the money the fee was conveyed back to its original owner. Long ago courts determined that although the form of this transaction showed an absolute sale of the fee with an option to repurchase, they would look behind the representation to reach the reality of a secured loan of money.

In the present case we have yet another attempt to clothe a loan in the garments of a sale by using the forms of absolute conveyance in the same fashion as was done in early real estate mortgages. Instead of the sale of a fee to real property we have the sale of a lesser real estate interest (a possessory estate for years). Even this is not new—for Blackstone tells us that the conveyance of an estate for years came to be the preferred form of security in a real estate loan, preferred even to the conveyance of a fee, because it avoided claims of dower by the wife of the mortgagee and because it avoided a separation on the death of the mortgagee of his equitable right to receive repayment from his legal duty to reconvey the property. (2 Blackstone, Commentaries, 158.) The essence of this case is that Golden State is absolutely bound to pay back the identical sum advanced, and the Fox Group is absolutely bound to reconvey the property on payment of the specified sum. The heart and purpose of the transaction is a transfer of money with an absolute obligation to repay. As pointed out with respect to similar contracts in *Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 342 [163 P.2d 869, 165 A.L.R. 621], if the true intent of the Fox Group were simply to acquire the master lease by purchase, there would be no point in requiring Golden State to repurchase the lease at the end of eight years, nor in requiring its stockholders to guarantee the repurchase.

We hold the agreement of September 9, 1959, provides for a loan of money and is usurious on its face. ■ How-

ever, in keeping with the views expressed in *White* v. *Seitzman*, 230 Cal.App.2d 756 [41 Cal.Rptr. 359], the granting of treble damages is discretionary with the trial court and depends upon the relative guilt of the parties in initiating the transaction. Appropriate findings on this point should be made on remand by the trial court.

The judgment is reversed with directions to the trial court to entertain further proceedings in accordance with these views.

Roth, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied March 4, 1965, and the petitions of the appellant and the respondents for a hearing by the. Supreme Court were denied March 31, 1965.