[Civ. No. 47657. Second Dist., Div. One. Oct. 13, 1976.]

GREAT AMERICAN INSURANCE COMPANY,
Plaintiff and Respondent, v.
NATIONAL HEALTH SERVICES, INC., et al.,
Defendants and Appellants.

**COUNSEL**

Irell & Manella, Thomas W. Johnson, Jr., Harold E. Kruth, Trope & Trope and Vickie Neemeyer for Defendants and Appellants.

Booth, Mitchel, Strange & Smith, George C. Mitchel and William J. Allard for Plaintiff and Respondent.

---

**OPINION**

**LILLIE, J.**—National Health Services, Inc., a corporation (National Health) and William H. B. Chan (Chan) filed two notices of appeal herein. One appeal is taken from order granting restraining orders against them pursuant to section 538.3, Code of Civil Procedure on January 23, 1975, the other from order of October 3, 1975, denying their motion pursuant to section 556, Code of Civil Procedure to discharge attachment issued the same date. These appeals have been consolidated. The principal issue is whether an action by a surety to recover on an indemnification agreement for payment on its bond is an action based on "money loaned" within the meaning of section 537.1, subdivision (a)(1), Code of Civil Procedure.

National Health was sued in the Riverside Superior Court (case No. 104974) by Care Construction, Inc. (Care) and others; Care procured a writ of attachment; National Health sought and acquired from Great American Insurance Company (Great American) a release of attachment bond; Great American required as a condition of this bond that an indemnity agreement be executed for its protection; the indemnity agreements were signed by National Health, Chan and Sterling W. Angel, president of National Health.[1] Care recovered judgment against National Health in the Riverside case and unable to satisfy the judgment, it moved pursuant to section 1058a, Code of Civil Procedure, to enforce Great American's liability on the bond. Ultimately judgment in the sum of $101,000 was entered against Great American on said bond.

---

[1] The application for writ of attachment made by Great American was denied as to Angel; he is not a party to this appeal.

Great American's indemnitors demanded that it appeal from this judgment[2] offering to pay the premium on the necessary appeal bond and all costs and attorney's fees incurred on appeal; it expressed its willingness to comply with this demand only in the event that the indemnitors post cash collateral or its equivalent for the full amount of the potential exposure on the appeal bond; they were unable to post such collateral and no appeal was taken; Great American satisfied the writ of execution obtained by Care.

Thereafter Great American demanded that National Health, Chan and Angel reimburse it pursuant to the terms of the indemnity agreement; upon their failure to comply with the demand, it filed against them the within action for indemnification and applied for a writ of attachment and restraining order against defendants. Supporting and opposing declarations and points and authorities were filed, and included in defendants' opposition was a motion under section 556, Code of Civil Procedure to discharge the attachment in the event it was granted; the application was heard and the same was granted, and the writ ordered issued as prayed. Defendant's motions (§ 556, Code Civ. Proc.) to discharge were denied by minute order. Great American's subsequent motion for summary judgment was denied.

Section 537.1, Code of Civil Procedure enumerates those actions in which a writ of attachment is available.[3] The action must be for a

---

[2]National Health appealed from the judgment taken against it. The judgment was affirmed by the Fourth District Court of Appeal (4 Civ. 15345).

[3]Section 537.1, Code of Civil Procedure provides: "An action referred to in Section 537 is an action or actions by the same plaintiff in which the total sum claimed, exclusive of interest, attorneys' fees and costs, is five hundred dollars ($500) or more and which is one or more of the following:

"(a) An action against a defendant described in subdivision (a), (b) or (c) of Section 537.2 for a liquidated sum of money based upon

"(1) Money loaned; or

"(2) A negotiable instrument; or

"(3) The sale or lease of, or a license to use, real or personal property (including, without limiting the generality of the foregoing, goods sold and delivered on open account); or

"(4) Services rendered,

if the claim is not secured by any mortgage, deed of trust or security interest on real or personal property or, if originally so secured, such security has, without any act of the plaintiff, or the person to whom the security was given, become valueless. The fact that interest, attorneys' fees, costs or any combination thereof are claimed by the plaintiff in addition to the principal amount of the debt shall not make the claim unliquidated within the meaning of this section.

"(b) An action against a defendant described in subdivision (d) of Section 537.2 for the recovery of money."

liquidated sum of money in excess of $500 (exclusive of interest, attorneys' fees and costs), and be based upon (1) money loaned; or (2) a negotiable instrument; or (3) the sale, lease, or license to use real or personal property; or (4) services rendered. Defendants subject to attachment of property are described in Code of Civil Procedure section 537.2, subdivisions (a) (corporations), (b) (partnerships), and (c) individuals engaged in a trade or business (a "business type" defendant. [*Shaw, Hooker & Co.* v. *Haisman,* 59 Cal.App.3d 262, 265 (130 Cal.Rptr. 528)].) This provision is part of the interim attachment law passed by the Legislature in 1972, following the decision in *Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13] [cert. den., 407 U.S. 924 (32 L.Ed.2d 811, 92 S.Ct. 2452)], declaring former section 537, subdivision 1, to be constitutionally invalid.

Because of the relative newness of this legislation there are few cases construing its scope and none directly in point. Thus, much of our task involves a consideration of the purpose of the law and the background out of which it arose. We are aided in this effort by the memorandum in support of Senate Bill No. 1048, written by Harold Marsh, Jr., Esq.,[4] the author of the initial draft of the 1972 legislation.

*Randone* v. *Appellate Department,* 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13], arose in the consumer context. Because the court could not undertake the wholesale redrafting of the subject statute in order to save those portions of it which might be constitutionally applied, the Supreme Court invalidated the former attachment law in toto. (5 Cal.3d at p. 563.) The result was that there was no effective remedy in the State of California whereby a creditor of a business could prevent the dissipation of the business' assets or take any action to collect his debt short of waiting while the action was pending on the trial calendar at the end of which time a judgment well might be worthless because no assets remained to satisfy it. (Memorandum [52 Cal.App.3d 457, 469].) It was considered "necessary for the economic health of the state that some form of remedy of attachment be restored in business situations." (*Id.,* at p. 470.)

The new legislation attempted to comply with the mandate of *Randone* essentially by restricting attachment to business property in actions on debts incurred by business defendants in commercial transactions, and

---

[4]This document is reprinted in full at 52 Cal.App.3d 457, 469 et seq., to which citation will be made.

by providing for prior notice and opportunity to be heard. Of course this is not to say that attachment is permitted in the case of all commercial debts of a business (*Gill* v. *De Sanz,* 52 Cal.App.3d 457, 467 [125 Cal.Rptr. 384]), but it is permitted in the case of "money loaned" (§ 537.1).

A loan of money is defined in Civil Code; section 1912, which provides in pertinent part: "A loan of money is a contract by which one delivers a sum of money to another, and the latter agrees to return at a future time a sum equivalent to that which he borrowed." It is undisputed that the indemnification agreement is a contract and that according to it, if Great American incurred any loss by reason of executing its bond, National Health would indemnify it, i.e., reimburse it to the extent of the loss. However, appellants argue that the crucial difference in this case is that the amount of the bond was not paid to them.

Surely the manual passage of money loaned into the hands of the borrower cannot be the essence of a loan. (Cf. *Advance Transformer Co.* v. *Superior Court,* 44 Cal.App.3d 127, 143 [118 Cal.Rptr. 350]; and see *Harris* v. *Gallant,* 183 Cal.App.2d 94, 96-97 [6 Cal.Rptr. 630].) If such were the case, the following could not be defined as a loan—the situation in which A, pursuant to agreement with B, pays money to C in discharge of B's debt to C—the law is to the contrary. (*Ehrlich* v. *McConnell,* 214 Cal.App.2d 280, 285 [29 Cal.Rptr. 283].)

It is clear that a transaction may be a loan although called something else by the parties thereto. (*Golden State Lanes* v. *Fox,* 232 Cal.App.2d 135, 139 [42 Cal.Rptr. 568].) The courts have frequently discerned a loan where the ordinary inspector might not have. (See, e.g., *West Pico Furniture Co.* v. *Pacific Finance Loans,* 2 Cal.3d 594, 604-605 [86 Cal.Rptr. 793, 469 P.2d 665]; *Milana* v. *Credit Discount Co.,* 27 Cal.2d 335, 341-342 [163 P.2d 869, 165 A.L.R. 621].) We must look to the substance of the transaction and not to its form. (*Burr* v. *Capital Reserve Corp.,* 71 Cal.2d 983, 989 [80 Cal.Rptr. 345, 458 P.2d 185].)

A surety company's procedure in considering an application for a bond resembles that used by banks before granting a loan. A bank does not make a loan based on average loss or default figures; it requires the would-be borrower reasonably to demonstrate his ability to repay the loan when it becomes due. (Conners, Cal. Surety and Fidelity Bond Practice (Cont.Ed.Bar 1969) p. 7.) Like a lender (*Golden State Lanes* v. *Fox,* 232 Cal.App.2d 135, 139 [42 Cal.Rptr. 568]), a surety-indemnitee

does not stand to make a profit or take a loss based on the use to which the money advanced is put. A loan of money may or may not provide for interest payments. (*Milana* v. *Credit Discount Co.*, 27 Cal.2d 335, 339 [163 P.2d 869, 165 A.L.R. 621].) A loan creates a debtor-creditor relationship (*Rochester Capital Leasing Corp.* v. *K & L Litho Corp.*, 13 Cal.App.3d 697, 702 [91 Cal.Rptr. 827]); upon the happening of the contingency for which indemnification is given, the surety-indemnitee is entitled to recover from the indemnitor. (Civ. Code, § 2778.) As with a loan, an indemnification agreement may be secured or unsecured. (See Rest., Restitution, § 76, com. e.)

In substance, Great American agreed to satisfy an obligation of National Health if the latter was unable to do so, upon the express understanding that in that event it would be reimbursed by National Health and the indemnitors. In substance this transaction is strikingly similar to the commonplace loan transaction. We do not say that there are no differences between the instant transaction and the ordinary loan (see, e.g., *Calvin & Co.* v. *United States of America*, 264 Cal.App.2d 571, 575 [70 Cal.Rptr. 578]) but we do say that whatever differences there are, they do not justify denying Great American the advantage of prejudgment attachment it undeniably would have had if, instead of posting a bond, it had delivered to appellants the amount of the bond so that they could have made a personal undertaking.

"The remedy of attachment is . . . limited to commercial transactions based upon contracts which are of such a nature that there would not normally be any dispute as to the fact of the obligation or the amount owed, by the provisions of Section 537.1 allowing the remedy only in an action based upon money loaned, a negotiable instrument, the sale or lease of real or personal property or services rendered. It is further required by that section that the action must be for a liquidated sum of money, in order to exclude those situations where the defendant in many cases may have a legitimate argument regarding the extent of the obligation." (Memorandum [52 Cal.App.3d 457, 471].) In sum, "the remedy was intended largely for routine commercial 'collection' cases—the kind of debt for which businessmen send each other bills before they sue." (*Gill* v. *De Sanz*, 52 Cal.App.3d 457, 463-464 [125 Cal.Rptr. 384].) This is just such a case—the amount of money at stake is not, and could hardly be in dispute, and it seems likely that the surety's demand for reimbursement by its indemnitor typically would be honored as a matter of course. Granted appellants raise several defenses

to respondent's claim, but this would appear to be the exceptional rather than the ordinary case. In any event, appellants have had a hearing below at which it was determined, inter alia, that by preponderance of the evidence there was no reasonable probability that such defenses would be successful.

In deciding that Great American's action falls within the scope of "money loaned" recited in section 537.1, subdivision (a)(1), Code of Civil Procedure, we do not hold that a surety's payment on a bond is a "loan"[5] for every purpose.[6] Nor do we now intend to begin a process of engrafting legal fictions onto the interim attachment legislation (see *Gill v. De Sanz,* 52 Cal.App.3d 457, 467 [125 Cal.Rptr. 384]); rather, we have looked to "the substance of the transaction rather than its form or the terminology used by the parties" (*Burr v. Capital Reserve Corp.,* 71 Cal.2d 983, 989 [80 Cal.Rptr. 345, 458 P.2d 185]), and to the intention of the Legislature (Code Civ. Proc., § 1859) in reaching this result.[7]

Appellants next argue that respondent breached a duty of good faith and fair dealing by refusing to permit National Health to prosecute an appeal from the judgment on the bond;[8] and that respondent acted as a volunteer either because payment on the bond was made on a void judgment or because respondent had a meritorious defense to payment. The purpose of such argumentation can only be to demonstrate that there is a reasonable probability that one or both of these defenses will be successful against respondent's claim for indemnification, and that therefore issuance of the writ was wrongful as in violation of section 538.4.

[5]As Justice Holmes once observed "A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." (*Towne* v. *Eisner,* 245 U.S. 418, 425 [62 L.Ed. 372, 376, 38 S.Ct. 158.)

[6]*Zoby* v. *United States* (4th Cir. 1966) 364 F.2d 216, held that payment by a surety on a contractor's bond was not a "loan" for the purpose of Internal Revenue Code of 1954, section 162 (26 U.S.C. § 162) "Deductions for Ordinary and Necessary Expenses" where the principal sought to so characterize when the surety had not been reimbursed, underscores the necessity to construe words in context.

Of course, whether performance and judicial bonds must be treated alike for purposes of the attachment provisions is a question not now before us.

[7]Because of our conclusion on this issue, we do not reach appellants' contention that the court abused its discretion in basing its order on the alternative ground of section 537.1, subdivision (a)(4), i.e., services rendered (not raised by the parties).

[8]Appellant corporation did appeal the judgment against it in the Riverside action.

The determination of the likelihood of the success of appellants' defenses was made on the basis of the preponderance of evidence. ██ "It is elementary that an appellate court cannot examine evidence to determine where the preponderance of the evidence lies. [Citations.] Our function is to determine whether the record contains any substantial evidence tending to support the finding of the trial court." (*In re Corey,* 230 Cal.App.2d 813, 823-824 [41 Cal.Rptr. 379]; *Bulkley* v. *Klein,* 206 Cal.App.2d 742, 751 [23 Cal.Rptr. 855].) ██ The trial court was presented with evidence which would support a finding that respondent acted reasonably and in good faith throughout, and that respondent paid on its bond under compulsion of law and not as a volunteer. It is unnecessary to reiterate this evidence; it is enough that it amply supports the court's decision.

██ The only remaining argument of any substance[9] is that of appellant Chan, that the writ of attachment was improperly issued as to him because respondent's claim against him does not arise out of his trade or business. This belated argument invokes the requirement of section 537.2, subdivision (c), Code of Civil Procedure, as construed by *Shaw, Hooker & Co.* v. *Haisman,* 59 Cal.App.3d 262 [130 Cal.Rptr. 528] and *Advance Transformer Co.* v. *Superior Court,* 44 Cal.App.3d 127 [118 Cal.Rptr. 350]. ██ These cases provide not only that the individual against whom attachment is sought must be engaged in a trade or business, but that the obligation underlying the action must arise directly out of the conduct of the trade or business.

"Upon the basis of the evidence introduced at the hearing, the court shall determine whether the case is one in which an attachment is properly issuable . . . ." (§ 538.4, Code Civ. Proc.) ██ That the court was well aware that attachment is not properly issuable where the defendant is not engaged in a trade or business is demonstrated by the denial of a writ of attachment as to another signatory of the indemnification agreement, with respect to whom the court said "The evidence presented is insufficient to show he is engaged in a trade or business."

---

[9]Appellants' claim that respondent's complaint fails to state a cause of action is merely a restatement of appellants' "volunteer" defense.

Appellants additionally contend that the trial court was inconsistent in allowing the writ of attachment to issue while denying respondent's motion for summary judgment. This contention is patently ill-conceived. On the section 538.4, Code of Civil Procedure hearing the court weighs the evidence; while under section 437c, Code of Civil Procedure, the court is precluded from weighing evidence; its only function is to determine whether facts have been presented which give rise to a triable issue.

In *Advance Transformer Co.* v. *Superior Court,* 44 Cal.App.3d 127 [118 Cal.Rptr. 350], husband and wife, president and secretary respectively (as well as directors, with their son) of a closed corporation wholly owned by them, signed a promissory note of the corporation as individual guarantors; the note was made as payment for business materials of the corporation. The trial court denied writ of attachment, holding that in the absence of a showing that the corporation was the *alter ego* of the individual defendants, these persons were not "engaged in a trade or business" under section 573.2, subdivision (c). Writ of mandate issued directing the lower court to vacate its order and grant a new hearing on the application for writ of attachment. (P. 145.) The extreme situations the court identified as being, on the one hand, a defendant engaged in guaranteeing for a consideration the debts of others and, on the other, one who has no financial stake in the success of the primary obligor. ■ "Cases falling between these extremes will require the exercise of judgment on a case-to-case basis to determine whether the activity of the defendant with respect either (1) to the extension of credit generally, or (2) to the business of the primary obligor is such as to justify the conclusion that the guarantee of the primary obligor's debt sued upon is *part and parcel of an activity which occupies the time, attention and effort of the guarantor for the purpose of livelihood or profit on a continuing basis.*" (Italics added.) (P. 144.)

■ In the Riverside action Mr. Chan had testified that he owned 1,270,000 shares (53.7 percent) of General Interior Corporation, about 250,000 shares (5 percent) of American Medical International, 1 million shares of National Health and a 50 percent interest in Buffalo Resources (gas and oil business). In addition, he had sole ownership of a holding company called Chan Medical which owned approximately 9 million shares of National Health.[10] On this evidence it seems fair to describe Chan's trade or business as that of a business investor. Thus Chan's business is one not defined by his relationship to National Health as a possible officer or director thereof but is independently identifiable. The clear inference from the record is that Chan's agreement to act as indemnitor arose out of that business insofar as he was acting to protect his very considerable interest in National Health. At no time did Chan introduce evidence to counter such inference; he claims only that the supporting evidence is insufficient. We do not agree.

[10] This testimony is recited in the declaration of James S. Armstrong in support of Great American's application for writ of attachment; Armstrong, an associate in the law firm representing Great American, was present during the taking of the testimony referred to hereinabove.

▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

▉▉▉▉▉▉▉▉▉▉▉▉▉

Appellants' purported challenge to the propriety of the temporary restraining orders issued pursuant to section 538.3, Code of Civil Procedure, and to the order denying dissolution of writ of attachment insofar as it has resulted in continuing in force the temporary restraining orders against them pending levy of the writ of attachment, is entirely unsupported by any argument in their briefs; the point is deemed abandoned (*Renden* v. *Geneva Development Corp.*, 253 Cal.App.2d 578, 591 [61 Cal.Rptr. 463]).

▉▉▉ The orders are, and each of them is, affirmed.

Wood, P. J., and Thompson, J., concurred.