**In re Janet Mary BAKER Debtor.**

**Homayoun Namvar, Plaintiff,**

**v.**

**Janet Mary Baker, Defendant.**

**Bankruptcy No. 02–10899–BKC–AJC.**

**Adversary No. 02–1217–BKC–AJC–A.**

United States Bankruptcy Court, S.D. Florida.

June 25, 2003.

Stacey F. Soloff, Miami, FL, for trustee.

Steve M. Glerum, Ft. Lauderdale, FL, for debtor.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LARRY L. LESSEN, Bankruptcy Judge.

This matter came before this Court on November 19, 2002 and June 23, 2003 at which time a full trial was held to determine whether the debt of the Defendant to Plaintiff was dischargeable under 11 U.S.C. § 523(a)(2), and the Court having reviewed the file, having reviewed depositions filed of record, having examined the pleadings, listened to argument of counsel, observed the candor and demeanor of the witnesses, and being otherwise duly advised in the premises, does hereby make these findings of fact and conclusions of law.

A complaint was filed by Plaintiff claiming that money delivered to the Defendant's creditor was fraudulently received because of Defendant's misrepresentations. Before the money was delivered, Plaintiff was a social friend of Defendant. When discussions arose about the financial problems of Defendant, Plaintiff looked to help Defendant. Plaintiff reviewed the Defendant's credit report in May of 1999 and contacted Defendant's student loan servicer to see if there could be any defer-

ral. Plaintiff called numerous credit card creditors on Defendant's behalf. Plaintiff could not get any of the debts to be forgiven and the parties decided to handle the debt another way.

Plaintiff thereafter entered into an agreement where he and Defendant would apply for a Discover credit card which would be used to pay off some of Defendant's outstanding credit card debt. The sum of $35,000.00 was immediately paid on September 29, 1999 by Plaintiff's credit card to Defendant's cards with Suntrust, MBNA and National Association. Before November 3, 1999, Plaintiff had advanced over $50,000.00 from his Discover account to various credit cards in Defendant's name. Defendant, after being the beneficiary of balance transfers of $59.983.00, signed a promissory note ("Note" hereafter) dated November 18, 1999, prepared by Plaintiff's brother, which incorporated the default terms and the introductory 2.9% APR rate (for 6 months) of the Discover credit card, which grew to 14.74% (after carrying a balance for 6 months). The Note also included a 12% interest rate, a fee of $10,000.00 which Plaintiff describes as "goodwill," and a penalty interest rate of 10%. It is questionable who came up with the idea to create the loan. The two parties appear to believe it was the idea of the other, but each represents that they agreed to the concept. The terms of the Note were devised by Plaintiff or Plaintiff's brother.

The loan was made when each party was a resident of the state of California. No real estate was involved in the transaction and it was entirely between two individuals and involved Defendant as a consumer. Plaintiff is not in the business of lending money to third parties. Plaintiff runs a real estate development business which was totally unrelated to the transactions included in this adversary.

Defendant paid $19,374.28 from October 29, 1999 to March 17, 2001 on the Discover obligation. After March of 2001, Defendant was unable to make payments. Defendant moved to New York in July of 2000 to complete her medical training. Defendant's expenses in New York were greater than her income. Accordingly, Defendant incurred additional credit card debts of $40,000.00 by March of 2001. Much of this credit card debt is associated with payments made by Defendant to Plaintiff's Discover account with cash advances. While in New York, Defendant hired a California attorney through the internet to handle the growing consumer credit issues. Defendant's attorney approached Discover and the other credit cards. Plaintiff gave Defendant's attorney the right to approach Discover. Unfortunately, discussion with Discover did not reach a settlement. Plaintiff ultimately paid off the Discover balance with another credit card before Discover's interest rates rose.

Defendant's attorney had written a letter dated June 25, 2001, indicating that Defendant would need six (6) months of abeyance before paying of the debt. At that time, Plaintiff hired an attorney named Kenneth Freed who had performed collection work for Plaintiff before. Freed responded with a letter to Defendant requiring her signature within seven (7) days on an enclosed addendum to the promissory note or lawsuit would be filed by Plaintiff. Signature was required by July 19, 2002. Defendant would not sign the agreement. Plaintiff knew that Defendant was unemployed in July of 2001. Defendant did not sign the addendum because it included an additional item for "attorney's fees" in the amount of $5,000. Plaintiff admitted he has never paid $5,000 in attorney's fees to Mr. Freed. The addendum required that those fees be paid no later

than July 23, 2001. When Defendant refused to sign the addendum, a lawsuit was filed by Plaintiff's assignee in California against Defendant on August 3, 2001.

Defendant moved to Florida in the summer of 2001, when her training was completed, to commence her first full time job as a hand surgeon. Defendant, subjected to Plaintiff's California lawsuit, and other financial issues, met with and hired a bankruptcy attorney who prepared a voluntary chapter 7 petition which was filed on January 29, 2002. Plaintiff is listed as a creditor and ultimately filed this adversary. Defendant responded with the affirmative defense of usury and a counterclaim for illegal contract.

The issues before this Court are: (1) whether the debt is dischargeable under § 523(a)(2); (2) whether the loan is usurious, illegal, void or voidable; and (3) whether fees should be awarded.

## § 523(a)(2)(A)

■■■ The pertinent clause of the Bankruptcy Code is § 523(a)(2)(A) which states:

(a) A discharge under § 727, 1141 or 1328(b) of this title does not discharge an individual debtor from any debt

. . .

(2) for money, property, services or an extension, renewal, or refinancing of credit, to the extent obtained by

(A) false pretense, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

A 523(a)(2)(A) claim requires that the following elements be proven:

(1) the debtor made the representations;

(2) that at the time she knew the representations were false;

(3) that she made them with the intention and purpose of deceiving the creditor;

(4) that the creditor relied on such representation;

(5) that the creditor sustained the alleged loss and damage as a result of the representations having been made.

*See In re Kinney,* 54 B.R. 348 (Bankr. M.D.Fla.1985) citing *National Bank of North America v. Newmark (In re Newmark),* 20 B.R. 842 (Bankr.E.D.N.Y. 1982); *Public Finance Corp. v. Taylor (In re Taylor),* 514 F.2d 1370 (9th Cir. 1975); *Sweet v. Ritter Finance Co. (In re Sweet),* 263 F.Supp. 540 (W.D.Va. 1967).

Plaintiff bears the burden of proof on these issues and must prove his case by a preponderance of the evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). "To further the policy of providing a debtor with a fresh start in bankruptcy, exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor." *In re Barr,* 194 B.R. 1009, 1016 (Bankr.N.D.Ill. 1996) (citing *Mayer v. Spanel Int'l Ltd.,* 51 F.3d 670, 674 (7th Cir.1995), *cert. denied,* 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995)).

The United States Supreme Court, in *Field v. Mans,* 516 U.S. 59, 116 S.Ct. 437, 133 L.Ed.2d 351 (1995), directed that the terms "false pretenses, a false representation, or actual fraud" should be given their ordinary common law meanings. 516 U.S. at 69–70, 116 S.Ct. 437.

■■■ "To prove that a debt is excepted from discharge under this section [523(a)(2)(A)] the plaintiff must establish that the debtor knowingly made misrepresentations with the intention and purpose of deceiving the creditor and that the creditor, relying on the representations, sustained loss and damage as a proximate result." *In re Vasquez,* 122 B.R. 495 (Bankr.E.D.Va.1990).

■ The first element requires Defendant knew her representations made in 1999 *at that time* were false. Defendant, although a doctor with a great deal of education, is not sophisticated with consumer issues and knew less about her consumer credit report than Plaintiff at the time of the loan's inception. Defendant—who let Plaintiff see everything that one could conceivably see about her credit rating—did nothing to misrepresent her intentions or ability (or lack thereof) to pay. Plaintiff acknowledged that Defendant would not be able to pay until she finished her training and became employed. Plaintiff further acknowledged he filed suit when the Defendant commenced work at her first full-time job as a doctor. She attempted and did pay for months while in residency and fellowship. Plaintiff admits the Defendant made payments of over $19,000.00 to Discover. The testimony supports that Defendant's expenses grew while in New York when finishing her medical training. While in New York, she was incapable of continuing to make the monthly payments to Plaintiff that she had made the year before in Los Angeles. But, as promised, she had intended to pay from her salary when she obtained her first job where she would work as a surgeon and earn a salary in excess of $100,000.00 annually.

When a doctor promises to pay with future income, that representation is not per se a § 523(a)(2)(A) fraudulent misrepresentation. *In re Vasquez* 122 B.R. 495 (Bankr.E.D.Va.1990). Plaintiff relied on Defendant's status as a professional for the loan. When Defendant suffered financial difficulties, she stopped paying. Plaintiff aggravated the situation by responding to her request for a six-month abeyance by hiring an attorney to first write a letter requesting immediate payment of $5,000.00 of attorney's fees and other costs and soon thereafter using that attorney to sue Defendant in order to seek a judgment against Defendant. Defendant had delivered a proposal to pay off the debt after being employed. Plaintiff's response with a lawsuit led to the unfortunate filing of this bankruptcy.

Plaintiff has to prove to this Court that he relied on Defendant's representations to his detriment. The question must be: what did Plaintiff rely on in 1999? Plaintiff claims, in the pleadings, life insurance was something he relied upon. In his testimony, Plaintiff admits he did not primarily want life insurance, but really wanted disability insurance—something not mentioned in the Note, addendum to the Note, nor in the complaint. Defendant had disability insurance through her employer. Plaintiff contends that this was not sufficient because he was not listed on the policy. Defendant attempted to obtain life insurance. Plaintiff admitted that Defendant contacted an insurance agent regarding life insurance. Defendant ultimately did not purchase life insurance because the policy was too expensive.

Plaintiff does not contend that Defendant lied in any way about her financial position at the time Plaintiff extended credit. Before Plaintiff lent money to Defendant, Defendant had delivered to Plaintiff the following:

a. Defendant's credit report;

b. The student loan items;

c. Defendant's financial statement; and

d. Defendant's disclosure of her residency salary being incapable of paying the loan but that the future doctor's salary would be the source for payment.

None of those documents represented that Defendant was creditworthy. Plaintiff further stated that the loan was made out of compassion as opposed to a cold and calculated business review of capability to re-

pay. Plaintiff described himself as a person who sought to help someone in need. Plaintiff admits that Defendant was in financial straits for the entire period he has known Defendant. In short, Plaintiff lent Defendant the money, after knowing about Defendant's extremely poor credit rating, because he relied on nothing other than her future professional salary to pay the loan. Such reliance on future income does not manifest a § 523(a)(2)(A) claim. *In re Vasquez*, 122 B.R. 495.

Plaintiff must prove that at the time he extended Defendant credit she had no intent to obtain insurance or repay the loan as promised. Plaintiff can not overcome his burden to prove fraudulent intent or reasonable reliance under the preponderance of the evidence standard required by *Grogan*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755. Defendant's actions after Plaintiff extended the credit support that she intended to repay the loan. Defendant signed the promissory note *after* Plaintiff paid the balance of Defendant's other credit cards with his Discover card. Defendant made fourteen payments to Discover over seventeen months totaling over $19,000. Defendant attempted to obtain life insurance. The mere fact that ultimately Defendant failed to obtain insurance does not prove by a preponderance of the evidence that she did not intend to obtain such insurance when the credit was extended. Having considered the evidence, the Court concludes that the debtor had the intent to repay Plaintiff, but could not after diligent efforts to pay. Since Plaintiff has failed to prove the elements of § 523(a)(2)(A) the Court does not need to address Defendant's affirmative defenses.

### Counterclaim

■ The second issue is the legality of the contract or usurious interest in the Note. Defendant claims that the contract (the "Note") between the parties is usuri-

ous and illegal under the laws of the State of California. If the Court finds that the Note is usurious and illegal the Note will be unenforceable. However, the Court has determined that the obligations under the Note are dischargeable. Therefore, a determination that the Note is unenforceable is not necessary.

■ A California court determined that the treble damage calculation must be awarded when warranted. The granting of treble damages upon a finding of usury is a matter within the trial court's discretion. *Golden State Lanes v. Fox* (1965) 232 Cal.App.2d 135, 142, 42 Cal.Rptr. 568. Even if the Court found that the Note was usurious and illegal the circumstances of this case do not warrant imposition of treble damages.

### § 523(d) Fees

■ The last issue before this Court is awarding fees to counsel for Defendant pursuant to § 523(d). This was a consumer loan and the adversary brought before this Court seeks exception from discharge under § 523(a)(2)(A). Plaintiff's position that the debt was not dischargeable pursuant to § 523(a)(2)(A) was substantially justified. Therefore, the Court will not award fees to counsel for Defendant.

Contemporaneously, this Court shall enter a final judgement in accordance with Bankruptcy Rule 9021 determining that the obligation due Plaintiff by Defendant is dischargeable.