[Civ. No. 9783. Fourth Dist., Div. One. Oct. 6, 1970.]

CAMBRIDGE DEVELOPMENT CO., INC., Plaintiff and Appellant, v. U. S. FINANCIAL et al., Defendants and Respondents.

## COUNSEL

Thomas A. Davies for Plaintiff and Appellant.

Shenas & Berton and Peter Shenas for Defendants and Respondents.

## OPINION

AULT, J.—In its original complaint, Cambridge Dev. Co., Inc. (Cambridge), charged respondents U. S. Financial and U. S. Mortgage with usury arising out of a transaction in which Cambridge borrowed $330,000 from the respondents to finance construction of 12 single-family residences and to pay off an existing encumbrance on the land. On the date of trial, September 30, 1968, Cambridge filed an amended complaint in which it added a cause of action alleging respondents had converted $24,000 of the loan proceeds. The case was tried without a jury. After a lengthy trial, the court found the loan was not usurious, but that respondents had wrongfully converted $24,000 from the loan proceeds to their own use. Written findings of fact, conclusions of law and judgment were signed and entered accordingly. Cambridge has appealed, contending the trial court erred in finding the loan was not usurious. Respondents have not appealed from the judgment against them on the second cause of action for conversion which awarded Cambridge $24,000 and ordered a set-off in that amount plus interest against the balance due on the promissory note.

The $330,000 loan was evidenced by an escrow agreement and a promissory note secured by a deed of trust signed on April 20, 1967. The note was due on or before May 1, 1968, and provided for interest at the rate of 7½ percent per annum on the principal sum. The escrow agreement required Cambridge to pay a loan fee of $11,550 in addition to the interest. Cambridge's contention the loan was usurious is predicated upon both the $11,550 loan fee charged and the $24,000 item which the court found to have been converted by respondents from the loan proceeds. If the $11,550 loan fee or the $24,000 item was given in consideration for the loan, the addition of either sum to the 7½ percent interest agreed upon would result in a charge in excess of 10 percent per annum permitted by article XX, section 22 of the California Constitution and would make the loan usurious.

We have concluded the trial court's determination neither was given in consideration for the loan is supported by substantial evidence and its holding the loan was not usurious should be affirmed.

Concerning the $11,550 loan fee, the trial court found:

"4. In said written agreement it was agreed, among other things, that plaintiff, CAMBRIDGE DEV. CO., INC., would pay to defendant, U. S. MORTGAGE, a loan fee in the amount of Eleven Thousand Five Hundred Fifty Dollars ($11,550).

"$\ldots\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot\quad\cdot$

"8. The aforesaid loan fee of Eleven Thousand Five Hundred Fifty Dollars ($11,550), was a reasonable charge for investigating, arranging, negotiating and servicing the aforesaid promissory note, and was in fact agreed to for that purpose, and was not a device for procuring additional interest."

Seemingly Cambridge does not question the sufficiency of the evidence to support these findings. In its brief it urges only that a lender may not impose such an additional charge, computed as a percentage of the total loan, and have its charge upheld as one for services rendered incidental to the loan. It asserts the loan fee charged was computed as 3½ percent of the total loan.

Neither the agreement of the parties nor the court's findings described the loan fee in terms of percentage; both used the fixed sum of $11,550. Throughout the trial, however, the witnesses, the attorneys and the trial judge interchangeably used the fixed sum, 3½ percent and 3½ points in referring to the loan fee. Assuming the fee was computed as a percentage of the total loan rather than as a fixed sum, we would attach no legal significance to the fact. Either may be converted into the other through simple arithmetic.

■ Where a lender charges a fee in addition to interest in connection with making a loan, it does not necessarily follow the usury laws have been violated even if the combined charges exceed the proscribed limit. "The Usury Law does not purport to fix or limit the legitimate expense or service charge that may properly be borne by the borrower." (*Beneficial Loan Soc., Ltd.* v. *Haight,* 215 Cal. 506, 517 [11 P.2d 857].) (See also *Haines* v. *Commercial Mortgage Co.,* 200 Cal. 609, 616 [254 P. 956, 255 P. 805, 53 A.L.R. 725]; *In re Fuller,* 15 Cal.2d 425, 434 [102 P.2d 321].)

■ The word "interest" as used in the usury law includes any bonus, commission, or any other form of compensation paid to the lender *for the use of the money borrowed,* but it does not include expense items for investigating, appraising, inspecting and otherwise servicing the loan. (*In re Fuller, supra,* 15 Cal.2d 425, 434.) ■ Where such a fee is charged the appli-

cable law is stated in *Klett* v. *Security Acceptance Co.*, 38 Cal.2d 770, at pages 787-788 [242 P.2d 873], where the court approved the following instruction as a correct statement of the law: " 'A lender is not prohibited from charging an extra and reasonable amount for incidental services, expenses or risk additional to the lawful interest, other than for the loan of money. He may make a reasonable charge for investigating, arranging, negotiating, brokering, making, servicing, collecting and enforcing his obligation.

" 'Such items, however, must be confined to specific service or expense incidental to the loan incurred in such a way as to preclude it being a device through which additional interest or profit on the loan may be exacted.' "

■ The crucial question is whether the additional charge made was a legitimate one for expenses and services incidental to the loan or whether it was merely a device or subterfuge to avoid usury laws. In making this inquiry, the court should look at all the facts involved in the transaction, not merely to the fact the charge was stated as a lump sum or as a percentage of the total loan. This is precisely the kind of inquiry the trial court made in the instant case, and its findings resolving the issue are supported by substantial evidence. The evidence not only shows respondents actually performed services in connection with the loan far beyond those ordinarily required in a simple loan transaction, but reveals the extraordinary and additional services were contemplated by the parties at the time the agreement was made.

In connection with the $24,000 item, the trial court found:

"5. At no time was it agreed between defendant, U. S. MORTGAGE, and plaintiff, CAMBRIDGE DEV. CO., INC., either orally or in writing, that defendant, U. S. MORTGAGE, would charge plaintiff, CAMBRIDGE DEV. CO., INC., a Twenty-four Thousand Dollars ($24,000.00) service fee, or any charge whatsoever as a service fee; nor did said parties agree, either orally or in writing, that plaintiff CAMBRIDGE DEV. CO., INC., would pay Twenty-four Thousand Dollars ($24,000.00) for any purpose whatsoever.

"        .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"9. On April 28, 1967, defendant, U. S. FINANCIAL, took Twenty-four Thousand Dollars ($24,000.00) of the loan proceeds belonging to plaintiff, CAMBRIDGE DEV. CO., INC., out of the loan escrow at STEWART TITLE COMPANY OF SOUTHERN CALIFORNIA without the knowledge, permission or consent of plaintiff, CAMBRIDGE DEV. CO., INC.

"10. At the time defendant, U. S. FINANCIAL, took the Twenty-four Thousand Dollars ($24,000.00) as aforesaid, plaintiff, CAMBRIDGE DEV. CO., INC., had a right to possession of said money.

"11. In taking said money, defendant, U. S. FINANCIAL, had no bad

motive, had no intent to defraud plaintiff, CAMBRIDGE DEV. CO., INC., and did not act maliciously or oppressively." These findings reflect the trial court's acceptance of the testimony of Cambridge's owner and principal officer and its rejection of respondents' version of the agreement of the parties.

The loan funds were escrowed in respondents' subsidiary corporation, Stewart Title Company. Respondents obtained the $24,000 by ordering Stewart Title to pay the money over. At trial respondents seriously contended the agreement was not a simple loan transaction. They had previously financed Cambridge's development of off-site improvements for the subdivision where the houses were to be built. The loan, in excess of $100,000, was in default and subcontractors who had worked on the improvements had not been paid and were threatening foreclosure. Cambridge had been unable to furnish a completion bond to the City of La Mesa and the Helix Irrigation District, and respondents had given their written guaranty of completion to those entities to meet the requirement. Cambridge had unsuccessfully attempted to obtain a take-out loan to build the houses and pay the existing bills from other sources, and respondents reluctantly agreed to proceed with the project in the hope of avoiding a substantial loss to both parties. They contended they agreed to use their influence to renegotiate the existing debts against the property and to prevent foreclosure and they were to receive, in addition to interest and costs, one-half the estimated profits, the sum of $24,000. In essence, respondents contended the arrangement was an investment rather than a loan transaction.[1]

Cambridge, on the other hand, maintained there had been no such agreement. Through its owner, it denied it had agreed to pay the $24,000 in the first instance or had authorized its release from the escrowed funds. He testified he had no knowledge of the withdrawal of the funds until over a month after they had been taken, and he consistently maintained the withdrawal was without agreement, consent or authorization.

Cambridge's first cause of action, to the extent it claims usury by reason of respondents' taking the $24,000, is inconsistent with the second cause of action for conversion in which it asserts the same sum had been wrongfully converted from the loan proceeds by respondents without its knowledge, consent or authorization. Since the trial court's findings Cambridge had not

---

[1]Nothing contained in the written agreement supports respondents' version of the transaction. It did contain authorization to disburse $133,800 from the escrowed funds for the satisfaction of demands necessary to accomplish the recordation of the deed of trust as a first lien on the property. Respondents assert this clause authorized the $24,000 withdrawal. Even under respondents' version, payment of the $24,000 was not "necessary to accomplish the recordation of the deed of trust as a first lien on the property."

agreed to the $24,000 payment and that respondents had taken this sum from the loan proceeds without its knowledge, permission or consent are based upon evidence which Cambridge itself introduced at the trial, Cambridge is in no position to urge on appeal the findings are not supported by substantial evidence. The contention the trial court should have determined the loan agreement to be usurious in spite of the findings is without merit.

■ Whether a transaction is usurious depends upon the agreement of the parties, not upon what transpires afterward. "The usurious character of a transaction is determined by the amount agreed to be paid, agreed at the time of making the loan." (*Abbot* v. *Stevens,* 133 Cal.App.2d 242, 248 [284 P.2d 159].) Since the loan was not usurious in its inception, subsequent events could not make it so. (*Abbot* v. *Stevens, supra,* pp. 242, 250; see also *Goldenzwig* v. *Shaddock,* 31 Cal.App.2d 719, 722 [88 P.2d 933].) The applicable rule is stated in 91 Corpus Juris Secundum, Usury, section 61, page 643: "When a lender has made a contract to lend money at a legal rate, his subsequent refusal to deliver to the borrower the whole sum agreed to be loaned is not usury which will affect the original obligation, but a mere breach of contract for which the borrower has an adequate remedy."

■ Having found the parties had not originally agreed to the $24,000 payment, the trial court correctly concluded respondents' subsequent unauthorized withdrawal of that sum from the loan proceeds was a conversion which did not reach back to taint the original legal loan agreement with usury.

The judgment is affirmed.

Brown (Gerald), P. J., and Coughlin, J., concurred.