[Civ. No. 16904. Fourth Dist., Div. One. May 3, 1979.]

CLIFFORD S. STRIKE et al., Plaintiffs and Appellants, v.
TRANS-WEST DISCOUNT CORPORATION et al.,
Defendants and Respondents.

736

**COUNSEL**

Luce, Forward, Hamilton & Scripps, Edgar A. Luce, Jr., Craig S. Andrews and Louis E. Goebel for Plaintiffs and Appellants.

Gray, Cary, Ames & Frye, F. P. Crowell and Brian L. Forbes for Defendants and Respondents.

## Opinion

**STANIFORTH, J.**—Plaintiffs Clifford S. Strike and Marjorie Stanley Strike (Strikes) sought injunctive relief to prevent a nonjudicial foreclosure of a deed of trust by Trans-West Discount Corporation (Trans-West)[1] on the Strikes' Rancho Santa Fe residence. At the outset of these proceedings Strikes obtained a temporary restraining order preventing pendente lite a trustee's sale of the property. After a three-day trial, the court made appropriate findings and denied Strikes the relief sought. Specifically, the trial court set aside the temporary restraining order but vacated the prior notice of default to allow Strikes further opportunity to repay the money owed; the court decreed Trans-West was entitled to nonjudicial foreclosure of its deed of trust with the right to credit bid the total amount owing by the Strikes. Strikes appeal this judgment.

### Facts

We view the evidence before the trial court—as the law requires—in the light most favorable to the prevailing party, giving it the benefit of every reasonable inference and resolving any conflicts in support of the judgment (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]; *Hasson* v. *Ford Motor Co.,* 19 Cal.3d 530, 544 [138 Cal.Rptr. 705, 564 P.2d 857]); and stray not from the record before the trial court (*Knapp* v. *City of Newport Beach,* 186 Cal.App.2d 669, 679 [9 Cal.Rptr. 90]).

The facts are: In 1974 the Strikes built a residence in Rancho Santa Fe, California. To finance the construction, they borrowed funds from Barclays Bank and gave in return a first deed of trust (deed of trust) on the residence property, securing a promissory note in the principal amount of $105,000.

Mr. Strike was a director, Chairman of the Board of Superior Coating and Chemical Company (Superior). Mrs. Strike and her brother owned 100 percent of the Superior stock. Superior contracted to pay Mr. Strike $12,000 per year in consulting fees. Mr. Strike had been owner and president of a New York engineering and construction firm for 33 years. He owned hotels in Montego Bay, Jamaica, and had done "millions of dollars of business" with Barclays Bank in New York, Montego and London.

---

[1]The first amended complaint also asked for an accounting of money owed Trans-West for declaratory relief concerning the parties' June 27, 1975, agreement, a decree quieting title and damages for fraud.

Trans-West was a licensed personal property broker in the business of accounts receivable financing. It advanced funds to Superior on the strength of Superior's accounts receivable and personal guaranties of Superior's principals, including Mr. Strike.

On March 12, 1973, Mr. Strike signed a general continuing guaranty, personally guaranteeing the obligations of Superior to Trans-West. The continuing guaranty contained no limitation on Mr. Strike's liability. In April of 1974, Superior became insolvent and failed while indebted to Trans-West in the amount of $111,204.65.

On April 23, 1974, Mr. Strike acknowledged his obligation and, upon advice of his attorney, executed a confession of judgment in favor of Trans-West in the amount of $111,204.65. This confession of judgment was filed on April 25, 1974, in the superior court, Los Angeles, and judgment was entered thereon on May 9, 1974. Its validity and enforceability is not in question.

In June of 1975, Mr. Strike came to Trans-West asking for help. Barclays Bank had commenced foreclosure proceedings to satisfy the unpaid balance on their promissory note secured by the deed of trust on the Strikes property; the balance due on the note was $105,000 principal, and $20,711.24 of unpaid interest, taxes, trustee's fees, and costs, for a total of $125,711.24.

At Mr. Strike's request Trans-West agreed to purchase the note and deed of trust from Barclays Bank; the parties on June 27, 1975, entered into a comprehensive written agreement ("June agreement") whereby it was agreed Strikes would convey record title to the Rancho Santa Fe property to Trans-West, but Strikes had the right to a reconveyance upon the express conditions set forth in the written agreement. Pursuant to this "June agreement" Trans-West purchased for cash from Barclays Bank an assignment of the $105,000 note and deed of trust for $125,711.24, and Strikes executed and delivered to Trans-West a "grant deed" to the residence property; it was also agreed that Trans-West would postpone the pending foreclosure. Further, if Strikes paid $299,286.27 to Trans-West (the sum of the confession of judgment, plus Barclays Bank note, plus interest) by September 30, 1975, Trans-West would reconvey the Barclays Bank deed of trust, execute a satisfaction of judgment, and delivery a grant deed back to Strikes.

The "June agreement" obligated Strikes in the interim to make all payments on senior deeds of trust, real property taxes, and the Rancho Santa Fe (homeowner's) Association assessments, with the additional payment of 2 percent interest per month if Trans-West had to pay those items. Strikes were to retain possession of the property and pay for maintenance, utilities, and fire insurance.

The trial court found this "June agreement" was entered into with the intent of consolidating and extending the maturity date of Strikes' underlying obligations to Trans-West; neither party to the agreement was guilty of bad faith or overreaching; nor was the agreement procured by fraud, oppression, economic duress or mistake.

Upon Strikes' failure to comply with the terms of the "June agreement," Trans-West gave Strikes two extensions of time to repay the underlying obligations and to reacquire their title. The last extension expired March 31, 1976. Thereafter, Trans-West, relying on its recorded "grant deed," filed an unlawful detainer action in the San Diego Superior Court seeking to evict Strikes. A final judgment on the merits was entered in that action denying the requested eviction on the ground the "June agreement" and "grant deed" constituted only a security device in favor of Trans-West.

Trans-West then instructed the trustee to proceed with a trustee's sale under the deed of trust which Trans-West had acquired by assignment from Barclays Bank. The trustee gave notice of the contemplated sale, scheduled it for September 3, 1974. Strikes then brought this action and obtained a temporary restraining order preventing the trustee's sale.

While denying Strikes the relief sought and authorizing Trans-West's nonjudicial foreclosure, the court concluded the "June agreement" violated statutory proscriptions pertaining to security agreements and usury, therefore was unenforceable, yet held it did not affect the validity and enforceability of their assigned trust deed and note or their confession of judgment. A declaration of rights was entered conformable with the court's findings and conclusions.

Strikes assert a multitude of errors were committed by the trial court. After analysis of both the factual and legal bases for Strikes' contentions, we conclude they are without merit and affirm the judgment. We detail and analyze the contentions in order of their presentation.

Discussion

I

■ Strikes argue Trans-West was incapable of taking an assignment of the Barclays Bank deed of trust since it had a lien on the property, to-wit: a recorded abstract of judgment. They cite California Civil Code sections 2904[2] and 2876[3] and case authorities. Where the holder of a junior lien on property pays off the debt secured by a senior lien "to protect his interest," the junior lienholder thereby becomes subrogated to the rights of the senior lienholder "even though he takes no assignment of the senior lien." (*Stein* v. *Simpson,* 37 Cal.2d 79, 84 [230 P.2d 816].) In *Snider* v. *Basinger,* 61 Cal.App.3d 819, 822-823 [132 Cal.Rptr. 637], the appeal court held tender of payments due on trust deed notes entitled Snider to an equitable lien by subrogation against the defendant Basinger's interest in the real property but Snider could not compel an assignment of the deeds of trust. From these sound legal premises, Strikes argue that Trans-West could obtain only an equitable lien (as opposed to an actual assignment) and therefore could not rely on the power of sale in the Barclays Bank trust deed. This reasoning is flawed for it departs from the facts in this case.

Substantial evidence here supports the trial court's conclusion that Trans-West did not act—was not compelled—to protect its position but rather to accommodate Strikes. Here, Trans-West *purchased* and *recorded* an assignment of Barclays Bank's trust deed.

In *Stein, supra,* relied upon by Strikes, on payment of the indebtedness owed on the first trust deed " 'Simpson did not secure from the bank an assignment of said indebtedness . . . .' " (*Stein* v. *Simpson, supra,* 37 Cal.2d 79, 82.)

From the sound legal premise that a junior lien holder who makes payments due on the senior lien *may not* compel assignment rights from the senior lienholder (*Snider* v. *Basinger, supra,* 61 Cal.App.3d 819), Strikes would draw conclusions which do not follow as a matter of law or

[2]California Civil Code section 2904 provides: "One who has a lien inferior to another, upon the same property, has a right: 1. To redeem the property in the same manner as its owner might, from the superior lien; and 2. *To be subrogated to all the benefits of the superior lien, when necessary for the protection of his interests,* upon satisfying the claim secured thereby." (Italics added.)

[3]California Civil Code section 2876 provides: "Where the holder of a special lien is compelled to satisfy a prior lien for his own protection, he may enforce payment of the amount so paid by him, as a part of the claim for which his own lien exists."

reason. Trans-West as a junior lienholder was under no legal or equitable disability preventing its acquisition of the Barclays Bank trust deed by assignment, together with all of Barclays' rights and remedies including the right to exercise the power of sale. This Trans-West did. The limits on power of sale contained in Civil Code section 2924 have no application. We repeat: Because the trust deed here foreclosed upon was *assigned* upon consideration by Barclays Bank to Trans-West, the equitable mortgage principles requiring judicial foreclosure under Code of Civil Procedure section 726 have no application.

## II

Strikes next argue: "Even if the assignment was valid, the doctrine of merger operates to extinguish the deed of trust." Without evidence, Strikes assert Trans-West intended to merge the acquired deed of trust and the confession of judgment lien into the "June agreement" and the grant deed resulting therefrom.

Again, Strikes call our attention to sound fundamental rules. A lien is extinguished by merger when a lienholder acquires ownership of the property. (*Ralph C. Sutro Co.* v. *Paramount Plastering, Inc.,* 216 Cal.App.2d 433 [31 Cal.Rptr. 174].) As the California Supreme Court in *Rumpp* v. *Gerkens,* 59 Cal. 496, stated: "In law, a merger always takes place when a greater estate and a less coincide and meet in the same person in one and the same right, without any intermediate estate. The lesser estate is said to be annihilated or merged in the greater; but a Court of equity is not guided in this matter by the rules of law. It will sometimes hold a charge extinguished where it would continue to exist at law; and sometimes preserve it, when at law it would be merged. The question is one of intention, actual or presumed, of the person in whom the interests are united. [Citations.]" (*Id.,* at pp. 501-502.) And the court in *Union Bank* v. *Wendland,* 54 Cal.App.3d 393 [126 Cal.Rptr. 549], repeated the rules: "A 'merger' occurs when a greater estate and a lesser coincide in the same person in one and the same right without any intermediate estate. [Citations.]" And the court held: "Here the second deed of trust was the lesser estate. It was annihilated or merged in the greater estate, i.e., the first deed of trust, without any intermediate estate intervening. The question is one of intent, actual or presumed, of the person in whom the interests are united. [Citations.]"·

The difficulty with Strikes' contention is it is contrary to the factual finding of the court, and therefore suggests correct rules of law inapplicable to the facts here. The trial court expressly found the acquisition by

Trans-West of the Barclays Bank deed of trust *did not* constitute a merger of title between Trans-West's security interest and its "legal title" as evidenced by the "grant deed"; and the "June agreement" *did not* constitute a merger. Here the trial court found the Strikes retained title to the property at all times. The "grant deed" was *simply a security device* so determined in the unlawful detainer litigation between these same parties. Therefore, there was no *title* in Trans-West into which its security devices—trust deed and judgment lien—could merge.

The law is clear that merger is a question of intent of the person in whom the interests are united. This is a fact question. Strikes have failed to carry the burden of proof on this factual issue. As was said in *Ito* v. *Schiller,* 213 Cal. 632, 635 [3 P.2d 1]; "A merger does not always follow the union of a greater and lesser estate in the same ownership. The question is one of intention, actual or presumed, of the person in whom the interests are united, the evidence in this cause being sufficient to show the true intention of appellants to have been as found by the court. The rule is stated in *Jameson* v. *Hayward* . . . as follows: '. . . Equity will prevent or permit a merger, as will best subserve the purposes of justice, and the actual and just intent of the parties. . . . In the absence of an expression of intention, if the interest of the person in whom the several estates have united, as shown from all the circumstances, *would be best subserved by keeping them separate, the intent so to do will ordinarily be implied.'* [Italics added.] [Citations.]" Clearly here, Trans-West's interests would be "best subserved" by intending no merger. Further, substantial evidence supports the trial court's finding of no intent to merge. The provision in the "June agreement" for full reconveyance is inconsistent with a merger intent.

Finally, if there had been a merger as between the trust deed and the judgment lien, the lesser would have been extinguished, merged into the greater, the senior security, the deed of trust. (*Union Bank* v. *Wendland, supra,* 54 Cal.App.3d 393, 406.)

### III

Strikes next contend (on their assumptions "the assignment was valid" and "there was no merger") that Trans-West could obtain *only* an equitable lien which can be foreclosed only by judicial processes under Code of Civil Procedure section 726. To arrive at this conclusion, Strikes misread *Snider* v. *Basinger* (61 Cal.App.3d 819 [132 Cal.Rptr. 637]) and does not make these necessary distinctions: "Assignment of an assignable cause of action is but one of the recognized forms of subrogation."

(*Meyers* v. *Bank of America, etc. Assn.,* 11 Cal.2d 92, 94 [77 P.2d 1084].) Equitable subrogation rights are to be distinguished from an assignment. (*Id.,* at pp. 96-97.)

■ A recorded assignment of note and deed of trust vests in the assignee all of the rights, interests of the beneficiary (*Musgrave* v. *Renkin,* 180 Cal. 785 [183 P. 145]) including authority to exercise any power of sale given the beneficiary (Civ. Code, § 858). The equitable subrogee to a senior lienholder's right, on the other hand, does not have identical rights, e.g., he cannot compel a written *assignment.* (*Snider* v. *Basinger, supra,* 61 Cal.App.3d 819, 824.) He cannot foreclose by nonjudicial process as can the assignee of such rights by written instrument. (Code Civ. Proc., § 726.) The power of sale here derived from the instrument itself. (Civ. Code, § 2932; *McDonald* v. *Smoke Creek Live Stock Co.,* 209 Cal. 231, 235-236 [286 P. 693].)

## IV

Strikes next assert trial court error in allowing Trans-West interest on the note secured by the deed of trust and the confession of judgment after a finding of usury. It is also argued that by reason of Trans-West's successful credit bid at the nonjudicial foreclosure sale, Trans-West has collected usurious interest. Accordingly, Strikes claim treble damages therefor.

■ It is true the trial court found the "June agreement" providing for interest at the rate of 2 percent per month was usurious; and Trans-West's personal property exemption from California usury laws was held inapplicable. Moreover, the rule is well settled that no interest whatsoever can be claimed by the usurious lender. (*Rochester Capital Leasing Corp.* v. *K & L Litho Corp.,* 13 Cal.App.3d 697, 703 [91 Cal.Rptr. 827].) The obligation to pay interest is void. (*Verbeck* v. *Clymer,* 202 Cal. 557, 562 [261 P. 1017].)

These rules authorize the trial court's holding the "June agreement" unenforceable, and no interest recoverable. However, the determination that the "June agreement" was usurious did not include a finding, and there is no evidence, that the confession of judgment on Barclays Bank note and trust deed were usurious transactions. Therefore, the trial court correctly declared Trans-West was entitled to recover the legal interest provided for in the judgment by confession and the Barclays Bank trust deed. The unenforceability of the subsequent "June agreement" did not affect in any manner these pre-existing concededly lawful documents.

Strikes' reliance upon *Maze* v. *Sycamore Homes, Inc.,* 230 Cal.App.2d 746 [41 Cal.Rptr. 338, 16 A.L.R.3d 464] is misplaced. In *Maze* the underlying investment agreement as well as the extension of that agreement was usurious. The appeal court held the entire transaction was tainted with usury and no interest recoverable. (*Id.* at p. 755.) Here, to the contrary, there is the express finding that the confession of judgment and trust deed promissory note are *not* tainted by usury.

## V

■ Finally, Strikes contend error in that the judgment allows Trans-West to receive 11 percent interest on the Barclays Bank note, inasmuch as Trans-West does not enjoy the exemption from the usury law as did its assignor Barclays Bank. No authority is cited for the proposition that the assignee of an exempt lender becomes thereby a usurer unable to collect any interest.

The California Constitution, article XV, section 1, exempts certain institutions, such as banks, from the usury laws. Strikes' contention would in effect prohibit—make uneconomic—the assignment or sale by banks of their commercial property to a secondary market. This would be disastrous in terms of bank operations and not conformable to the public policy exempting banks in the first instance.

Further, a contract, not usurious in its inception, does not become usurious by subsequent events. (*Cambridge Dev. Co.* v. *U.S. Financial,* 11 Cal.App.3d 1025, 1031 [90 Cal.Rptr. 333]; *Boerner* v. *Colwell, Co.,* 21 Cal.3d 37, 53 [145 Cal.Rptr. 380, 577 P.2d 200].) In contrast, *Calimpco, Inc.* v. *Warden,* 100 Cal.App.2d 429, [224 P.2d 421], the contract was usurious at its inception; the appeal court held the assignee of such usurious contract who intentionally received usurious interest was liable for the statutory penalties. (*Id.* at p. 446.) There is no merit in this contention.

## VI

Finally, Strikes assert, by reason of Trans-West's credit bid at the trustee's sale, it collected usurious interest and is liable for treble damages. This contention rests on no facts. Again the trial court disallowed *any* interest on the usurious "June agreement." The interest allowed was lawful; it flowed from untainted sources.

Nor are the Strikes entitled to attorney fees by virtue of Civil Code section 1717. They were not the "prevailing party"; rather, the trial court properly awarded attorney fees to Trans-West. The judgment was entered in *favor* of Trans-West. That judgment determining the rights of the parties and the prevailing party is supported by substantial evidence and sound legal principles.

Judgment affirmed.

Brown (Gerald), P. J., and Cologne, J., concurred.

A petition for a rehearing was denied May 21, 1979, and appellants' petition for a hearing by the Supreme Court was denied June 27, 1979.