Filed 6/12/15

**CERTIFIED FOR PARTIAL PUBLICATION**[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| KHALEMA M. MONTGOMERY,<br><br>        Cross-complainant and Appellant,<br><br>v.<br><br>GCFS, INC., et al.,<br><br>        Cross-defendants and Respondents. | A139978<br>A140456<br><br>(Alameda County<br>Super. Ct. No. HG-12-640018) |

Financial Code section 22340, subdivision (a) (section 22340(a))[1] provides that "A licensee may sell promissory notes evidencing the obligation to repay loans made by the licensee pursuant to this division or evidencing the obligation to repay loans purchased from and made by another licensee pursuant to this division to institutional investors, and may make agreements with institutional investors for the collection of payments or the performance of services with respect to those notes."[2] After being sued for an unpaid consumer debt, Khalema M. Montgomery (appellant) filed a cross-complaint challenging the validity of her debt. She contends the sale of her debt from a licensed finance lender to an entity that was neither licensed nor an institutional investor violated section 22340(a). We reject appellant's interpretation of this provision and affirm.

---

[*] Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts I and III.

[1] All undesignated section references are to the Financial Code.

[2] "Institutional investors" are defined in section 22340, subdivision (b). (See *post*, fn. 4.)

1

BACKGROUND

In 2004, CashCall, Inc. (CashCall) issued a consumer credit account to appellant.[3] CashCall was a licensed finance lender pursuant to the California Finance Lenders Law (§ 22000 et seq.; Finance Lenders Law). The debt appellant incurred from the credit account is governed by the Finance Lenders Law.

In 2011, CashCall sold appellant's debt to GCFS, Inc. (GCFS) for collection. In 2012, GCFS sold appellant's debt to Mountain Lion Acquisitions, LLC (Mountain Lion LLC). Mountain Lion LLC then sold or assigned the debt to Mountain Lion Acquisitions, Inc. (Mountain Lion). Neither GCFS, Mountain Lion LLC, nor Mountain Lion is a licensed finance lender pursuant to the Finance Lenders Law. These entities are also not institutional investors within the meaning of section 22340.[4]

---

[3] Because we are reviewing orders sustaining a demurrer and granting a motion for judgment on the pleadings, we assume the facts alleged in appellant's cross-complaint are true. (*People ex rel. Harris v. Pac Anchor Transportation, Inc.* (2014) 59 Cal.4th 772, 777.)

[4] Section 22340, subdivision (b), defines "institutional investor" to mean:

"(1) The United States or any state, district, territory, or commonwealth thereof, or any city, county, city and county, public district, public authority, public corporation, public entity, or political subdivision of a state, district, territory, or commonwealth of the United States, or any agency or other instrumentality of any one or more of the foregoing.

"(2) A bank, trust company, savings bank or savings and loan association, credit union, industrial bank or industrial loan company, finance lender, residential mortgage lender, or insurance company doing business under the authority of and in accordance with a license, certificate, or charter issued by the United States or any state, district, territory, or commonwealth of the United States.

"(3) Trustees of pension, profit sharing, or welfare funds, if the pension, profit sharing, or welfare fund has a net worth of not less than fifteen million dollars ($15,000,000), except pension, profit sharing, or welfare funds of a licensee or its affiliate, self-employed individual retirement plans, or individual retirement accounts.

"(4) A corporation with outstanding securities registered under Section 12 of the Securities Exchange Act of 1934 or any wholly owned subsidiary of that corporation; provided, however, that the purchaser represents that it is purchasing for its own account

2

Mountain Lion subsequently sued appellant for payment on the debt. Appellant filed a cross-complaint against Mountain Lion, Mountain Lion LLC, GCFS, and certain individuals alleged to be officers, directors, employees, or agents of these entities (collectively, respondents), alleging violations of the Finance Lenders Law, the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.; the Rosenthal Act), and the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692 et seq.; the Federal Debt Collection Act). Appellant alleged that the sale or transfer of her debt to entities that were neither licensed finance lenders nor institutional investors violated section 22340(a) and rendered the debt void pursuant to section 22750, subdivision (b).

GCFS and an affiliated individual respondent filed demurrers to appellant's cross-complaint. Mountain Lion, Mountain Lion LLC, and affiliated individual respondents filed a motion for judgment on the pleadings. The trial court granted the respondents'

---

for investment and not with a view to or for sale in connection with any distribution of the promissory note.

"(5) A syndication or other combination of any of the foregoing that is organized to purchase the promissory note.

"(6) A trust or other business entity established by an institutional investor for the purpose of issuing or facilitating the issuance of undivided interests in, the right to receive payments from, or that are payable primarily from, a pool of financial assets held by the trust or business entity if all of the following apply: [¶] (A) The business entity is not a sole proprietorship. [¶] (B) The pool of assets consists of one or more of the following: [¶] (i) Interest bearing obligations. [¶] (ii) Other contractual obligations representing the right to receive payments from the assets. [¶] (iii) Surety bonds, insurance policies, letters of credit, or other instruments providing credit enhancements for these assets. [¶] (C) The interests will be either of the following: [¶] (i) Rated investment grade by Standard & Poor's Corporation or Moody's Investors Service, Inc. 'Investment grade' means that the securities will be rated by Standard & Poor's Corporation as AAA, AA, A, or BBB, or by Moody's Investor Service, Inc., as Aaa, Aa, A, or Baa, including a rating with a '+' or '-' designation or other variations that occur within these ratings. [¶] (ii) Sold to an institutional investor as otherwise defined in this section. [¶] (D) The offer and sale of the securities is qualified under the Corporate Securities Law of 1968 (Division 1 (commencing with Section 25000) of Title 4 of the Corporations Code) or is registered under federal securities laws, or is exempt from qualification or registration."

motions, finding the sale of appellant's debt to unlicensed, non-institutional investor entities was not in violation of section 22340(a). This appeal followed.

DISCUSSION

I. *Appealability*

Mountain Lion, Mountain Lion LLC, Andy Maxwell, and Dennis Scott Carruthers argue appellant's appeal is not proper with respect to them because the record reveals no "judgment" against them and no resolution of Mountain Lion's complaint.

We disagree with these respondents' apparent contention that the lack of a document titled "judgment" is dispositive. The trial court granted these respondents' motion for judgment on the pleadings and ordered appellant's cross-complaint be dismissed. This order was written, signed by the trial court, and filed in the action. "All dismissals ordered by the court shall be in the form of a written order signed by the court and filed in the action and those orders when so filed shall constitute judgments and be effective for all purposes . . . ." (Code Civ. Proc., § 581d.)

However, we agree that the lack of a resolution on Mountain Lion's complaint is relevant with respect to whether this judgment is final and appealable as to Mountain Lion. "[A] judgment is not final and not appealable when it decides the issues in a cross-complaint but not the issues in a complaint, unless the cross-complaint sought separate and independent relief by or against different parties, or the judgment or order on the cross-complaint leaves no issues to be determined as to one party." (*Westamerica Bank v. MBG Industries, Inc.* (2007) 158 Cal.App.4th 109, 132.) Mountain Lion was the plaintiff on the complaint, and the record reveals no final resolution of this complaint.

Accordingly, with respect to Mountain Lion the judgment on the cross-complaint is not yet appealable, because it does not resolve all the issues between appellant and Mountain Lion. With respect to the remaining respondents, however, who were not plaintiffs and as to whom no issues are left to be resolved, the judgment on the cross-complaint is final and appealable. We will dismiss the appeal as to Mountain Lion only.

4

II. *Section 22340(a)*

Appellant argues the sale of her consumer debt to entities that were neither licensed finance lenders nor institutional investors violated section 22340(a). We disagree.

The Finance Lenders Law requires all persons "engaged in the business of making consumer loans" be licensed. (§§ 22009, 22100, subd. (a).) Section 22340(a) provides: "A licensee may sell promissory notes evidencing the obligation to repay loans made by the licensee pursuant to this division or evidencing the obligation to repay loans purchased from and made by another licensee pursuant to this division to institutional investors, and may make agreements with institutional investors for the collection of payments or the performance of services with respect to those notes." Appellant argues this language—stating a licensee "may" sell notes to institutional investors—means that licensees may *not* sell notes to anyone else, apart from other licensees. Respondents contend the statute's grant of permission to sell to institutional investors does not preclude sale to any other party.

The starting point for determining an issue of statutory interpretation is the statutory language. (*Tarrant Bell Property, LLC v. Superior Court* (2011) 51 Cal.4th 538, 542 (*Tarrant Bell*).) As respondents argue, "[u]nder 'well-settled principle[s] of statutory construction,' we 'ordinarily' construe the word 'may' as permissive and the word 'shall' as mandatory." (*Ibid.*) However, we find this principle of limited utility in the present case. No party is contending section 22340(a) *requires* licensees to sell their notes to institutional investors. The issue is whether it permits licensees to sell their notes to institutional investors and other parties, or whether it permits licensees to sell their notes only to institutional investors.

Respondents also argue that neither section 22340(a) nor any other provision of the Finance Lenders Law expressly prohibits a licensee from selling debt to a non-institutional investor. We are not persuaded to end the inquiry there, however. If the Finance Lenders Law permits licensees to sell debt to anyone, as respondents contend, section 22340(a) appears on its face to be unnecessary. Such an interpretation would

contravene the principle of statutory construction directing us to "assume[] that every part of a statute serves a purpose and that nothing is superfluous." (*In re J.W.* (2002) 29 Cal.4th 200, 209.) Moreover, as appellant argues, another principle of statutory interpretation, "commonly known under the Latin name of *expressio unius est exclusio alterius*, is that the expression of one thing in a statute ordinarily implies the exclusion of other things." (*Ibid.*)

These principles appear to weigh in favor of appellant's interpretation. However, "neither of these principles of statutory construction is applied invariably and without regard to other indicia of legislative intent. Thus, we have explained that the rule against interpretations that make some parts of a statute surplusage is only a guide and will not be applied if it would defeat legislative intent or produce an absurd result. [Citation.] And we have said that courts do not apply the *expressio unius est exclusio alterius* principle 'if its operation would contradict a discernible and contrary legislative intent.' " (*In re J.W., supra,* 29 Cal.4th at p. 209.)

Because the statutory language is ambiguous, "we may properly consider other indicia of legislative intent, including relevant legislative history." (*Tarrant Bell, supra,* 51 Cal.4th at p. 542.) Section 22340(a) was enacted, under a different section number, in 1985. (Stats. 1985, ch. 187, § 1, p. 1145 [enacting § 22476].)[5] The legislative history reveals a very specific purpose: to permit licensees under the Finance Lenders Law to sell notes secured by real property to institutional investors without having to also be licensed as a real estate broker. An Assembly floor analysis explains: "Present law regulating [finance lenders] is silent concerning the authority of these lenders to sell and service promissory notes. The Real Estate Law[6], however, requires any person engaged in

---

[5] Section 22476 was later repealed and reenacted as section 22340 without substantive change. (Stats. 1994, ch. 1115, § 1, p. 6588 [repealed]; Stats. 1994, ch. 1115, § 2, p. 6588 [reenacted].)

[6] Business and Professions Code section 10000 et seq.

assigning notes 'to the public' to be licensed under that law.[7]  [Finance lenders] are exempt from the Real Estate Law when acting within the scope of their respective licenses.[8]  [¶] This bill would authorize [finance lenders] to sell and service promissory notes to institutional investors within the scope of their licenses.  These businesses will consequently be exempt from licensing requirements under the Real Estate Law when engaged in these activities."  (Assem. Floor Analysis, Concurrence in Sen. Amends., Assem. Bill No. 346 (1985–1986 Reg. Sess.) as amended June 6, 1985, p. 2.)  As explained in a statement of legislative intent printed with unanimous consent in the Assembly Journal, the bill "authorizes finance companies . . . to sell real estate loans they have made to specified classes of institutional investors, and to make agreements to service those loans. [¶] In accordance with the finance companies' exemption from the real estate law, this authority eliminates the possibility that they could be required to be licensed and regulated as real estate brokers when selling or servicing real estate loans they have made."  (2 Assem. J. (1985–1986 Reg. Sess.) p. 3298.)

This legislative history makes clear that section 22340(a) was intended to clarify Business and Professions Code section 10133.1, subdivision (a)(6): the sale of any debt, including debt secured by real estate, by a licensed finance lender to an institutional investor was within the authority of that lender's license.  That history also makes clear that the Legislature did not intend the provision to prohibit the sale of debt to non-institutional investors.  Instead, the Legislature left the statute silent as to other sales, leaving open the possibility that other statutory schemes could regulate those sales.  For

---

[7] This is apparently a reference to Business and Professions Code sections 10130 ("It is unlawful for any person to engage in the business of . . . a real estate broker . . . within this state without first obtaining a real estate license from the department . . . .") and 10131.1, subdivision (a) (defining real estate broker to include a person "in the business of . . . selling to, or exchanging with the public, . . . promissory notes secured directly or collaterally by liens on real property").

[8] Business and Professions Code section 10133.1, subdivision (a)(6), provides that Business and Professions Code section 10131.1 (see *ante,* fn. 7) does not apply to "[a]ny person licensed as a finance lender when acting under the authority of that license."

example, section 22340(a) does not prohibit a licensed finance lender from selling debt to a party other than an institutional investor, but the provision also does not alter the Real Estate Law's requirement that, if the debt is secured by real property, the finance lender must obtain a broker's license prior to any sale to the non-institutional investor. (Bus. & Prof. Code, §§ 10130, 10131.1; see *ante*, fn. 7.)[9] We conclude section 22340(a) does not prohibit a finance lender from selling consumer debt to a party other than an institutional investor or another finance lender.

Appellant argues this interpretation contravenes the overall purpose of the Finance Lenders Law. We disagree. The law focuses on the formation and terms of covered loans.[10] A "finance lender" is defined to include "any person who is engaged in the business of *making* consumer loans." (§ 22009, italics added.) In accord with this definition, most of the regulatory provisions govern the terms of the loan when made, including permissible interest rates and fees and various impermissible terms. (See §§ 22300–22307, 22311–22312.)[11] The sale or assignment of the loan does not alter these terms.

We are similarly unpersuaded by appellant's contention that our conclusion would contravene the purpose of restrictions on usury. Usury restrictions do not restrict the assignment of loans. (See *WRI Opportunity Loans II LLC v. Cooper* (2007) 154 Cal.App.4th 525, 533 ["To be usurious, a contract 'must in its inception require a payment of usury'; subsequent events do not render a legal contract usurious."].) The California Constitution exempts from its usury restrictions "persons authorized by

---

[9] Appellant does not allege her debt was secured by real property.

[10] This focus is consistent with the law's stated purposes, which include "[t]o ensure an adequate supply of credit to borrowers in this state," "[t]o protect borrowers against unfair practices by some lenders, having due regard for the interests of legitimate and scrupulous lenders," and "[t]o permit and encourage the development of fair and economically sound lending practices." (§ 22001, subd. (a)(1), (4), & (5).)

[11] There are some regulations relating to payment on and satisfaction of the note. (E.g., § 22337(c)–(e).)

8

statute"—such as finance lenders (§ 22002)—and "any successor in interest to any loan or forbearance exempted under this article." (Cal. Const. art. XV, § 1.) The Constitution does not require successors in interest to be independently exempt from usury restrictions. Moreover, in *Strike v. Trans-West Discount Corp.* (1979) 92 Cal.App.3d 735, 745, the Court of Appeal rejected an argument that "the [non-exempt] assignee of an exempt lender becomes thereby a usurer unable to collect any interest," noting such a rule would be "not conformable to the public policy exempting [certain entities] in the first instance."

Section 22340(a) provides that the authority conferred by a finance lenders license includes the sale of debts only to institutional investors, but the statute does not prohibit the sale of debts to other parties. Because appellant's claims hinge on finding a violation of section 22340(a) in the sale of her loan to unlicensed, non-institutional investor parties, her claims fail.[12]

III. *Attorney Fees*

The trial court granted GCFS's motion for attorney fees for work performed in connection with appellant's Rosenthal Act claim. Civil Code section 1788.30, subdivision (c) provides that "reasonable attorney's fees may be awarded to a prevailing creditor upon a finding by the court that the debtor's prosecution or defense of the action was not in good faith." A similar statute authorizing fees to prevailing defendants in actions under the Consumers Legal Remedies Act, Civil Code section 1750 et seq., has been interpreted "as requiring a finding of subjective bad faith." (*Corbett v. Hayward Dodge, Inc.* (2004) 119 Cal.App.4th 915, 924; see *id.* at p. 920 [quoting Civ. Code, § 1780, former subd. (d),[13] as authorizing fee award " 'to a prevailing defendant upon a finding by the court that the plaintiff's prosecution of the action was not in good

---

[12] Because we conclude the sale of the loan did not violate section 22340(a), we need not decide whether appellant could state a claim if she had proven such a violation.

[13] This subdivision is now found at Civil Code section 1780, subdivision (e). (Stats. 2008, ch. 479, § 2, p. 3375.)

faith' "].)  "When a tactic or action utterly lacks merit, a court is entitled to infer the party knew it lacked merit yet pursued the action for some ulterior motive."  (*Id.* at p. 928.)

Appellant contends her claim that GCFS violated the Rosenthal Act by representing to Mountain Lion LLC that appellant's debt was valid, when it was in fact void as a result of the violation of section 22340(a), was colorable.  We agree.

First, although we have rejected appellant's section 22340(a) argument on the merits, in light of the statutory language we cannot conclude that it utterly lacked merit.

Second, GCFS argues that, even if section 22340(a) rendered appellant's debt void, appellant's claim that GCFS's sale of the void debt to Mountain Lion LLC violated the Rosenthal Act was utterly without merit.  The Rosenthal Act prohibits certain violations of the Federal Debt Collection Act, including making a "false representation" about "the character, amount, or legal status of any debt."  (15 U.S.C. § 1692e, subd. (2); Civ. Code, § 1788.17 ["every debt collector collecting or attempting to collect a consumer debt shall comply with the provisions of Sections 1692b to 1692j, inclusive, of . . . Title 15 of the United States Code"]; *Masuda v. Citibank, N.A.* (N.D. Cal. 2014) 38 F.Supp.3d 1130, 1134 ["Federal judicial interpretations of the [Federal Debt Collection Act] are incorporated into the Rosenthal Act by Civil Code § 1788.17 such that a plaintiff may state a claim for violation of the Rosenthal Act simply by showing that a defendant violated any of several provisions of the [Federal Debt Collection Act]."].)  In an unpublished decision, the Ninth Circuit concluded "a consumer states a valid claim for relief under the [Federal Debt Collection] Act when he alleges that a debt collector has made false representations as to the legal status of a debt in connection with the sale, transfer or assignment of a debt to another debt collector, with the knowledge that the purchaser, transferee or assignee intends to initiate or continue attempts to collect the debt."  (*Magrin v. Unifund CCR Partners* (9th Cir. 2002) 52 Fed.Appx. 938, 939.)[14]  We express no opinion as to the ultimate merit of appellant's argument that an entity's

---

[14] "In California courts, '[u]npublished federal cases are not binding authority but they may be cited as persuasive.' "  (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1394, fn. 3.)

10

representation, during the sale of a debt to a debt collector, that the debt is valid when it is in fact void constitutes a violation of the Rosenthal Act; however, we conclude the argument is at least colorable.

Accordingly, we will reverse the award of attorney fees.

DISPOSITION

The judgment against appellant on her cross-complaint with respect to cross-defendants GCFS, Nancy Edrington, Mountain Lion LLC, Andy Maxwell, and Dennis Scott Carruthers is affirmed. The appeal of the order dismissing appellant's cross-complaint with respect to plaintiff and cross-defendant Mountain Lion Acquisitions, Inc., is dismissed. The order awarding attorney fees to GCFS is reversed. Respondents are awarded their costs on appeal.

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

(A139978/A140456)

Superior Court of Alameda County, No. HG-12-640018, Hon. Delbert C. Gee, Judge.

Consumer Law Center, Fred W. Schwinn and Raeon R. Roulston, for Cross-Complaintant and Appellant.

Brighton Hushing-Kline, for Cross-Defendants and Respondents GCFS, Inc. and Nancy Edrington.

Dennis Scott Carruthers, in pro. per., and for Cross-Defendants and Respondents Mountain Lion Acquisitions, Inc., Andy Maxwell, and Mountain Lion Acquisitions, LLC.

Alto Litigation, Bahram Seyedin-Noor, for Amicus Curiae Sunlan Corporation for Cross-Defendants and Respondents.